**NORTHERN INDIANA COMMUTER TRANSPORTATION DISTRICT,**
Appellant (Plaintiff below),

v.

**CHICAGO SOUTHSHORE AND SOUTH BEND RAILROAD, Appellee**
**(Defendant below).**

No. 46S03–9703–CV–191.

Supreme Court of Indiana.

Sept. 8, 1997.

---

Michael C. Harris, Chesterton, for Appellant.

Stanley C. Fickle, Peter J. Rusthoven, Anne N. DePrez, Indianapolis, Michael J. Daley, Gregory C. Ward, Chicago, for Appellee.

## ON PETITION TO TRANSFER

BOEHM, Justice.

Arbitration presumably intended to resolve this dispute without resort to the courts has now produced lawsuits and appeals in two different states. As their contract provided, the parties submitted a dispute over its interpretation to arbitration. After an arbitration panel issued an award, both parties sued, one in Indiana to overturn the award and the other in Illinois to enforce it. We hold that because the Illinois court was the first to enter a judgment on the validity of the award, the Full Faith and Credit Clause of the United States Constitution requires Indiana courts to accord that judgment the same effect it would receive in an Illinois state court. Under Illinois law, a stay for a reasonable time pending appeal of the Illinois judgment is at least one appropriate action for a trial court to take before determining the res judicata effect of that judgment. Although under the peculiar facts of this case the Indiana court had jurisdiction over the

claims presented to it, we reverse the trial court's dismissal and direct that the Indiana proceedings be stayed for a reasonable time pending the outcome of the Illinois litigation.

**Factual and Procedural Background**

The parties to this lawsuit are Northern Indiana Commuter Transportation District ("NICTD"), an Indiana municipal corporation, and Chicago SouthShore and South Bend Railroad ("SouthShore"), an Indiana partnership engaged in the railway freight business.[1] NICTD and SouthShore had an agreement whereby SouthShore operated its freight business over NICTD's rails and agreed to pay a fee for the privilege. In 1992 a dispute arose between NICTD and SouthShore over the amount of the annual fee. It is undisputed that the Agreement initially set the fee for each year after 1990 at twelve per cent of SouthShore's gross revenues for the prior year. However, the parties differed over whether a clause providing for mandatory renegotiation of the fee every third year to account for inflation applied to SouthShore itself, or only to a subsequent purchaser of SouthShore's rights. The parties were unable to resolve their differences through mediation and in 1993 NICTD initiated a demand for arbitration. The Agreement stipulated that Indiana law governed and provided that (1) "all arbitration proceedings shall take place within the State of Indiana"; and (2) if either party believed an arbitration decision was based on an "error of law," the aggrieved party could "institute an action at law within the State of Indiana to determine such legal issue."

These provisions notwithstanding, the parties agreed to hold the arbitration proceedings in Chicago for the convenience of the three Chicago-based attorneys who served as arbitrators.[2] In the summer of 1994 an evidentiary hearing was held in the offices of a law firm in Chicago. On August 11, 1994, the arbitration panel ruled in a split decision that the inflation adjustment clause applied only to a subsequent purchaser of SouthShore, and not to SouthShore itself. Accordingly, the award set the annual fee at twelve per cent of SouthShore's annual gross revenues for the prior year.

On September 9, 1994, NICTD filed a declaratory judgment action in the Superior Court of LaPorte County, Indiana. Although not styled as a motion to vacate or modify the award, NICTD's complaint essentially asked for a declaration that its interpretation of the Agreement was correct and in substance challenged the arbitration decision. On October 26, 1994, SouthShore moved to dismiss the complaint for lack of subject-matter jurisdiction, citing the Uniform Arbitration Act's provision conferring jurisdiction to confirm the award on the courts of the State where the parties agreed to arbitrate.[3] On October 28, 1994, SouthShore filed an application to confirm the arbitration award in the Circuit Court of Cook County, Illinois. On December 15, 1994, NICTD filed a "motion in lieu of answer" in Illinois contesting the jurisdiction of the Illinois court over the arbitration. On February 22, 1995, the Indiana trial court granted SouthShore's motion to dismiss, agreeing with SouthShore that NICTD was

---

1. NICTD was created by statute in 1977. *See* 1977 Ind. Acts, P.L. 229, § 1 (repealed and recodified in 1980); *see now* IND.CODE §§ 8–5–15–1 to 8–5–15–26 (1993 & Supp.1996). In 1984, the General Assembly gave NICTD the authority to own and operate a railroad between Chicago and several points in Indiana. *See* 1984 Ind. Acts, P.L. 64, §§ 1–15. In 1989, the "old" Chicago SouthShore declared bankruptcy and NICTD and Anacostia & Pacific Company, Inc. ("A & P") joined forces to purchase its operating assets from the bankrupt estate. NICTD acquired the passenger business and A & P took over freight operations. The two entered into a Memorandum Agreement ("Agreement") providing, among other things, that A & P would pay NICTD a maintenance-of-way fee for the use of NICTD's rail lines. The "new" SouthShore, the

party to this case, acquired all of A & P's rights and liabilities under the Agreement later that year.

2. The agreement to arbitrate in Chicago was made orally, but was memorialized in a letter from the chair of the arbitrators to all counsel noting that "[t]he parties by counsel waived the requirement that 'All arbitration proceedings shall take place within the State of Indiana.'"

3. On November 18, 1994, NICTD filed an amended complaint in the Indiana action. In response, SouthShore renewed its motion to dismiss for lack of subject-matter jurisdiction and relied on its memorandum of law filed on October 26, 1994.

attempting in effect to overturn the award and that only Illinois had jurisdiction because the arbitration took place there. On March 14, 1995, the Illinois trial court ruled that it had jurisdiction over SouthShore's application to confirm the award and denied NICTD's motion. On April 12, 1995, NICTD moved in the Illinois case to vacate or modify the award. SouthShore responded with a motion to strike NICTD's motion on the ground that NICTD had not filed within ninety days of the August 11, 1994 arbitration award, as required by the Illinois Uniform Arbitration Act.[4] On September 6, 1995, the Illinois trial court granted SouthShore's motion to strike, finding that the Act did not permit extension of the ninety day deadline. Finally, on December 20, 1995, the Illinois court entered its judgment confirming the award. NICTD appealed that ruling in Illinois, as well as the earlier Illinois ruling holding that Illinois had subject-matter jurisdiction over the arbitration.

Meanwhile, NICTD had initiated a timely appeal of the Indiana trial court's dismissal of its suit in LaPorte County. On February 20, 1996, the Indiana Court of Appeals reversed the trial court's dismissal. The court held that (1) Indiana had subject-matter jurisdiction because the Agreement, and not the place of arbitration, controlled the location of judicial review; and (2) the arbitrators' interpretation of the contract was contrary to law. *Northern Indiana Commuter Transp. Dist. v. Chicago SouthShore and South Bend R.R.*, 661 N.E.2d 842 (Ind.Ct.App.1996). Even though the Indiana trial court's ruling dealt only with SouthShore's motion to dismiss on jurisdictional grounds, the Court of Appeals also ruled on the merits of NICTD's complaint. The court held that the inflation adjustment clause applied to SouthShore as well as any successor and remanded the case to arbitration for purposes of determining the amount of the fee. The earlier ruling of the Illinois trial court, which postdated the Indiana trial court's dismissal, had not been presented to the Indiana Court of Appeals at that point.

SouthShore moved for rehearing in the Indiana Court of Appeals on March 21, 1996.

In the motion, SouthShore raised for the first time the December 20, 1995 Illinois trial court decision confirming the award. SouthShore contended that (1) the Full Faith and Credit Clause required Indiana courts to give that decision preclusive effect; and (2) the sua sponte ruling by the Court of Appeals on the merits of NICTD's complaint had denied SouthShore due process of law because SouthShore had never been given the opportunity to answer the complaint on the merits. In denying rehearing, the Court of Appeals first observed that full faith and credit generally requires a state "to give to a judgment at least the res judicata effect which the judgment would be accorded in the State which rendered it." *Northern Indiana Commuter Transp. Dist. v. Chicago Southshore and South Bend R.R.*, 666 N.E.2d 447, 448 (Ind. Ct.App.1996) (citation omitted). However, noting that NICTD had appealed the Indiana dismissal before the Illinois court ruled that it had jurisdiction, the court held that Indiana was not required to give the Illinois judgment full faith and credit: "[B]ecause the Illinois court, as the second court, accepted jurisdiction before the issue regarding jurisdiction had been fully and fairly litigated and finally decided in the Indiana courts, we are not required to give full faith and credit to the Illinois decision to confirm the arbitration award." *Id.* at 449 (footnote omitted). The court also rejected the claim that SouthShore had been denied due process because the court viewed the arguments SouthShore would have made on the merits—had it been allowed to answer NICTD's complaint—as efforts to relitigate factual questions that were barred by the Agreement. *Id.* at 449– 50.

Armed with the opinion of the Indiana Court of Appeals, NICTD moved in the Illinois trial court to vacate the Illinois judgment and argued that the Full Faith and Credit Clause required Illinois to give preclusive effect to the Indiana appellate decision. On July 24, 1996, the Illinois court denied NICTD's motion, observing that the Indiana Court of Appeals "certainly didn't give full faith and credit to the courts of the state of Illinois." SouthShore sought transfer from

---

4. 710 ILL.COMP.STAT.ANN. 5/1–23 (West 1992).

the Court of Appeals to this Court. We heard oral argument in this case on March 4, 1997, and granted transfer on March 11, 1997. Next, on June 18, 1997, the Appellate Court of Illinois affirmed the trial court's decision exercising jurisdiction and confirming the award. *Chicago SouthShore and South Bend R.R. v. Northern Indiana Commuter Transp. Dist.*, 289 Ill.App.3d 533, 224 Ill.Dec. 595, 682 N.E.2d 156 (1997), *reh'g denied.* Most recently, a "certificate of importance" was issued by the Appellate Court, which had the effect of requiring review by the Illinois Supreme Court. *See* Ill.S.Ct. Rule 316 and discussion *infra* note 10. For the reasons explained below, we order that the Indiana proceedings be stayed for a reasonable time pending the outcome of the appellate proceedings in Illinois.

In broad brush, the parties' contentions in this Court are as follows. SouthShore argues that (1) Indiana courts must give full faith and credit to the Illinois judgment confirming the arbitration award; and (2) the Illinois judgment is accorded res judicata effect in Illinois and therefore must be given the same effect here. NICTD responds that the Illinois judgment was rendered in violation of NICTD's federal constitutional right to procedural due process. Specifically, NICTD contends that the Illinois court erred by not allowing NICTD to respond to the merits of SouthShore's petition to confirm. According to NICTD, a judgment rendered in violation of due process need not be recognized in Indiana. NICTD also argues that exclusive jurisdiction has always existed in Indiana and that no deference is required to an Illinois judgment rendered by a court without jurisdiction over the matter. SouthShore replies that the jurisdictional issue was finally determined by the Illinois trial court and thus cannot be relitigated in Indiana.

## I. Full Faith and Credit

This case largely turns on settled constitutional principles governing the preclusive effect to be accorded a judgment rendered by the courts of another state. The Full Faith and Credit Clause of the United States Constitution mandates that "[f]ull faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state." U.S. CONST. art. IV, § 1. The constitutional provision is implemented by an Indiana statute making explicit that "records and judicial proceedings" from courts in other states "shall have full faith and credit given to them in any court within this state, as by law or usage they have in the courts whence taken." IND.CODE § 34-1-18-7 (1993). Full faith and credit has long meant that "the judgment of a state court should have the same credit, validity, and effect, in every other court of the United States, which it had in the state where it was pronounced." *Underwriters Nat'l Assurance Co. v. North Carolina Life and Accident and Health Ins. Guar. Ass'n*, 455 U.S. 691, 704, 102 S.Ct. 1357, 1365, 71 L.Ed.2d 558 (1982) (internal quotation marks omitted) (citing *Hampton v. McConnel*, 16 U.S. (3 Wheat.) 234, 235, 4 L.Ed. 378, 379 (1818) (Marshall, C.J.)); *accord Durfee v. Duke*, 375 U.S. 106, 109, 84 S.Ct. 242, 244, 11 L.Ed.2d 186 (1963).[5]

Nonetheless, "before a court is bound by the judgment rendered in another State, it may inquire into the jurisdictional basis of the foreign court's decree. If that court did not have jurisdiction over the subject matter or the relevant parties, full faith and credit need not be given." *Underwriters Nat'l Assurance Co.*, 455 U.S. at 705, 102 S.Ct. at 1366 (citation omitted). This scope of review is a "limited" one, *id.* at 706, 102 S.Ct. at 1366–67, that does not entail de novo review of the jurisdictional issue by the second court. Rather, "the general rule [is] that

---

**5.** As noted above, the Appellate Court of Illinois recently affirmed the decision of the Illinois trial court. In its discussion of the Full Faith and Credit Clause and, particularly, *Nevada v. Hall*, 440 U.S. 410, 99 S.Ct. 1182, 59 L.Ed.2d 416 (1979), the Appellate Court of Illinois stated that "a state's recognition of another state's laws or *judicial decisions* is based on state policy, rather than a constitutional command." *Chicago*

*SouthShore and South Bend R.R.*, 224 Ill.Dec. at 601, 682 N.E.2d at 162 (emphasis added). To the extent the court here meant to suggest that a state may decline to accord the same effect to a judgment rendered by the courts of another state that would be given in the rendering state, we believe this is a misreading of *Hall* and the precedents we discuss today.

a judgment is entitled to full faith and credit—even as to questions of jurisdiction—when the second court's inquiry discloses that those questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment." *Durfee,* 375 U.S. at 111, 84 S.Ct. at 245. Preclusive effect must be given even where the first court's conclusion as to jurisdiction was erroneous as a matter of law. *Underwriters Nat'l Assurance Co.,* 455 U.S. at 714, 102 S.Ct. at 1370–71. In other words, if jurisdiction was "fully considered" and "finally determined" in the first state, that generally is the end of the matter. *Id.* at 707, 102 S.Ct. at 1367. A ruling is entitled to full faith and credit—i.e., the same effect it is given in the state of issuance—even if it is not final under the law of that state. *See Barber v. Barber,* 323 U.S. 77, 86–88, 65 S.Ct. 137, 141–42, 89 L.Ed. 82 (1944) (Jackson, J., concurring).[6]

■ Finally, certain dispute resolution mechanisms unquestionably do not constitute "judicial proceedings" for purposes of full faith and credit. *See, e.g., McDonald v. City of West Branch,* 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984) (holding that unappealed arbitration award was not a "judicial proceeding" entitled to full faith and credit under 28 U.S.C. § 1738). However, the Illinois trial court judgment confirming the award and the intermediate appellate decision affirming that judgment are "judicial proceedings" within the meaning of the Full Faith and Credit Clause. *Cf. Matsushita Elec. Indus. Co., Ltd. v. Epstein,* 516 U.S. 367, ——, 116 S.Ct. 873, 878, 134 L.Ed.2d 6,

17 (1996) (judgment of Delaware trial court affirmed by Delaware Supreme Court was a "judicial proceeding" within the meaning of 28 U.S.C. § 1738).

## II. Full Faith and Credit is Properly Preserved

■ As a preliminary matter, NICTD contends that SouthShore waived its right to rely on the Full Faith and Credit Clause by not presenting the Illinois judgment in the Indiana Court of Appeals at the earliest opportunity. For this proposition, NICTD cites several Indiana appellate procedural cases holding that new claims or issues, including constitutional arguments and the defense of res judicata, cannot be presented for the first time in a petition for rehearing. *See, e.g., City of Indianapolis v. Wynn,* 239 Ind. 567, 159 N.E.2d 572 (1959). SouthShore responds that it did not raise the issue until rehearing because under the procedural posture of this appeal it would have been premature to do so earlier. This case was in the Indiana Court of Appeals on the trial court's grant of SouthShore's motion under Trial Rule 12 to dismiss for lack of subject-matter jurisdiction. The only issue before the Court of Appeals was the validity of that ruling. SouthShore argues that full faith and credit in essence raises the affirmative defense of res judicata, which must be pleaded in the defendant's answer. Ind. Trial Rule 8(C). At the time the Court of Appeals issued its decision, no answer had been filed in the case. Accordingly, SouthShore contends it was not required to present the Illinois trial court ruling to the Indiana Court of Appeals.

---

**6.** NICTD does not maintain that its pending appeal in Illinois divests the Illinois trial court judgment of binding effect for purposes of the Full Faith and Credit Clause. Nor would any contention along these lines be viable. In its most recent pronouncement on full faith and credit doctrine, the Supreme Court of the United States reiterated that the Full Faith and Credit Act, 28 U.S.C. § 1738—which mandates that the "judicial proceedings" of any state "shall have the same full faith and credit" in federal courts as they have in the rendering state—"directs all [federal] courts to treat a state court judgment with the same respect that it would receive in the courts of the rendering state." *Matsushita Elec. Indus. Co., Ltd. v. Epstein,* 516 U.S. 367, ——, 116 S.Ct. 873, 877, 134 L.Ed.2d 6, 16–17 (1996).

The lack of any reference to finality in *Matsushita* is consistent with the Court's directives in *Underwriters Nat'l Assurance Co.* and in other cases dealing with the constitutional provision. As Justice Jackson put it in *Barber:* "Neither the full faith and credit clause of the Constitution nor the Act of Congress implementing it says anything about final judgments or, for that matter, about any judgments. Both require that full faith and credit be given to 'judicial proceedings' without limitation as to finality." *Barber,* 323 U.S. at 87, 65 S.Ct. at 141 (Jackson, J., concurring). If the rendering state does not accord preclusive effect to a decision because of a pending review, full faith and credit requires no more of any other state.

There are sound reasons for requiring a party to present all known arguments or claims to an appellate court before its decision is rendered. Rehearing opinions exhaust precious judicial resources that could be expended elsewhere. Decisions such as *Wynn* reflect the emphasis placed on judicial economy in deciding whether to consider an issue for the first time on rehearing. However, none of NICTD's cited cases involved a litigant claiming deprivation of a federal constitutional right due to a surprising and unforeseeable result on appeal. The effect of the Court of Appeals' ruling was to preclude SouthShore from making its arguments on the merits as to the construction of the Agreement, one of which is presumably based on full faith and credit. To be sure, SouthShore could have urged the Illinois judgment as an alternative ground for affirming the Indiana judgment of dismissal. However, we agree with SouthShore that the Court of Appeals' disposing of the appeal on the merits could not have been anticipated and prevented SouthShore from feeling the need to raise its federal constitutional issue at an earlier time. Where a state court acts in an unanticipated way to deprive a party of the opportunity to make an argument or present a valid defense based on the Federal Constitution, the issue is not waived for purposes of review by the Supreme Court of the United States. *Herndon v. Georgia*, 295 U.S. 441, 443–44, 55 S.Ct. 794, 794–95, 79 L.Ed. 1530 (1935); *Brinkerhoff–Faris Trust & Sav. Co. v. Hill*, 281 U.S. 673, 677–78, 50 S.Ct. 451, 453, 74 L.Ed. 1107 (1930); *Saunders v. Shaw*, 244 U.S. 317, 320, 37 S.Ct. 638, 640, 61 L.Ed. 1163 (1917). As Justice Cardozo succinctly summarized in *Herndon*: "The settled doctrine is that when a constitutional privilege or immunity has been denied for the first time by a ruling made upon appeal, a litigant thus surprised may challenge the unexpected ruling by a motion for rehearing, and the challenge will be timely." *Herndon*, 295 U.S. at 447, 55 S.Ct. at 796 (Cardozo, J., dissenting). This standard is met where the trial court disposed of the case on the basis of subject-matter jurisdiction and the appellate court not only reverses on that issue, but resolves the merits of the dispute without briefing or argument by the parties. Accordingly, this Court should entertain the issue as a matter of Indiana appellate procedure. Finding waiver here could needlessly present an incorrect decision on a matter of federal constitutional law to the Supreme Court of the United States.

We are also mindful of the deference to the courts of a sister state that comity suggests even if the Full Faith and Credit Clause does not require it. To the extent SouthShore is responsible for not raising the issue sooner, the Illinois courts are not at fault. The Illinois trial court was the first to enter a judgment enforcing the arbitration award. If we held that SouthShore's full faith and credit argument was waived and ruled in NICTD's favor on the merits, the possibility of inconsistent judgments would arise. Under these circumstances, we decline to find waiver here.

### III. Litigation of the Jurisdictional Issue in Illinois

Our first line of inquiry in assessing what credit, if any, to give the Illinois judgment is whether the Illinois court "fully considered" and "finally determined" the issue of its own jurisdiction over the subject matter and the person of the parties. *Underwriters Nat'l Assurance Co.*, 455 U.S. at 707, 102 S.Ct. at 1367. The record reveals that these issues were fully briefed and argued and conclusively decided. In response to South-Shore's application to confirm the award, on December 15, 1994 NICTD filed a "motion in lieu of answer" vigorously contesting the jurisdiction of the Illinois trial court over the arbitration. NICTD also contended that it was an Indiana state agency not subject to personal jurisdiction in Illinois. On March 14, 1995, that court ruled that NICTD's parol agreement to arbitrate in Chicago—notwithstanding the Agreement's written provisions to the contrary—had conferred personal and subject-matter jurisdiction on Illinois courts under Illinois common law.

Under the relevant provisions of the Illinois Uniform Arbitration Act, which are substantively the same in this respect as Indiana's, jurisdiction to enforce the award is conferred on the courts of the state specified in a written arbitration agreement between the parties. *Compare* 710 Ill.Comp.Stat.

ANN. 5/1 & 5/16 (West 1992) *with* IND.CODE §§ 34–4–2–1 & 34–4–2–17 (1993). Although the Illinois trial court acknowledged that the Illinois Uniform Arbitration Act generally required a written agreement to confer jurisdiction on Illinois courts, the court concluded that in Illinois "the legal effect of a parol submission and award is the same as those in writing." The court therefore squarely addressed one of NICTD's principal arguments against subject-matter jurisdiction in Illinois—the lack of a written agreement so providing. According to the court, "NICTD clearly submitted to arbitration in Illinois" and, because of the explicit waiver, "the provision that arbitration proceedings shall occur in Indiana no longer exists." [7]

We might agree with NICTD that the Illinois court's construction places excessive weight on the physical presence of the arbitrators and ignores the apparent intent of the parties as expressed in the Agreement. We might also agree that the statutes of both states seem to emphasize a written agreement to confer jurisdiction and that none appears to be present in this record conferring jurisdiction on Illinois courts. However, the question of jurisdiction in Illinois was fully litigated and, as explained below, we are not free to second-guess an Illinois trial court as we may those of Indiana. Moreover, the subject-matter jurisdiction of the Illinois courts is a matter of Illinois law. The December 20, 1995 judgment confirming the award eliminates any doubt as to the decision of the Illinois trial court to exercise jurisdiction. *Stoll v. Gottlieb*, 305 U.S. 165, 171–72, 59 S.Ct. 134, 137, 83 L.Ed. 104 (1938) ("Every court in rendering a judgment tacitly, if not expressly, determines its jurisdiction over the parties and the subject matter.") (footnote omitted). Both rulings—on jurisdiction and on the merits of SouthShore's application—were issued before the Indiana Court of Appeals held in 1996 that Indiana courts had jurisdiction over the arbitration.

In sum, the Illinois court was the first to render a judgment on the ultimate issue of the validity of the award.

## IV. Illinois Law of Res Judicata

The effect Indiana must accord the Illinois judgment turns on the effect that judgment would be given in Illinois. *Underwriters Nat'l Assurance Co.*, 455 U.S. at 704, 102 S.Ct. at 1365–66. The Illinois Supreme Court recently explained that "[f]or the doctrine of res judicata to apply, three requirements must be met: (1) there was a final judgment on the merits rendered by a court of competent jurisdiction; (2) there was an identity of cause of action; and (3) there was an identity of parties or their privies." *Rein v. David A. Noyes & Co.*, 172 Ill.2d 325, 216 Ill.Dec. 642, 647, 665 N.E.2d 1199, 1204 (1996) (citation omitted and italics deleted), *reh'g denied; accord Leow v. A & B Freight Line, Inc.*, 175 Ill.2d 176, 222 Ill.Dec. 80, 81–82, 676 N.E.2d 1284, 1285–86 (1997). The December 20, 1995 order confirming the award was a judgment on the merits: "Upon the granting of an order confirming, modifying or correcting an [arbitration] award, judgment shall be entered in conformity therewith and be enforced as any other judgment." 710 ILL.COMP.STAT.ANN. 5/14 (West 1992); *Monmouth Public Schools v. Pullen*, 141 Ill.App.3d 60, 95 Ill.Dec. 372, 378, 489 N.E.2d 1100, 1106 (1985) ("If the arbitration award is binding on the parties, any inquiry into the matters originally controverted is forever closed.") (citation omitted); *In re McNabola*, 43 B.R. 362 (Bankr.N.D.Ill.1984) (giving preclusive effect to order confirming an arbitration award under the Act). The parties and cause of action are the same in this case as in the Illinois action. And, as noted, the jurisdiction of the Illinois court was also adjudicated in Illinois.

The only troublesome question is whether Illinois regards the judgment as "final" [8] and binding. There are no Illinois

---

7. Another factor that apparently influenced the Illinois trial court was the then-recent decision by the LaPorte Superior Court not to exercise jurisdiction over NICTD's challenge to the arbitration. Although we question whether this should have been part of the inquiry, the Illinois

judgment is still entitled to preclusive effect for the reasons explained in this opinion.

8. "Final" appears to be used in two senses in some discussions of this subject. A judgment may be "final" in the sense that it is not subject to modification and is ripe for appeal. It is also

decisions elaborating the res judicata effect to be given a judgment confirming an arbitration award that is on appeal.[9] However, the preclusive effect of such a ruling appears to be the same as any other judgment. The Illinois Uniform Arbitration Act provides that "[a]ppeals may be taken in the same manner, upon the same terms, and with like effect as in civil cases." 710 ILL.COMP.STAT. ANN. 5/18 (West 1992). A judgment that is not appealed is clearly final and binding on the parties for res judicata purposes. *Debowski v. Shred Pax Corp.*, 45 Ill.App.3d 891, 3 Ill.Dec. 794, 799, 359 N.E.2d 204, 209 (1977). An appellate court judgment is also entitled to preclusive effect. *People v. Mitchell*, 95 Ill.App.3d 779, 51 Ill.Dec. 1, 10, 420 N.E.2d 415, 424 (1981). However, NICTD's appeal is still pending in the Illinois courts.[10] A judgment in a civil case that is reversed on appeal is not entitled to preclusive effect. *Meeker v. Payne*, 101 Ill.App.3d 723, 57 Ill.Dec. 64, 65–66, 428 N.E.2d 614, 615–16 (1981). Illinois law appears unsettled (or at least unclear) on the effect of a pending appeal on the finality of a judgment for purposes of res judicata. SouthShore relies on authority suggesting that a judgment is given res judicata effect even while it is being appealed. *State Life Ins. Co. v. Board*

*of Educ.*, 401 Ill. 252, 81 N.E.2d 877, 880 (1948); *Village of Rosemont v. Lentin Lumber Co.*, 144 Ill.App.3d 651, 98 Ill.Dec. 470, 480, 494 N.E.2d 592, 602 (1986); *Sixty–Third & Halsted Realty Co. v. Goldblatt Bros.*, 342 Ill.App. 389, 96 N.E.2d 838, 843 (1951), *aff'd*, 410 Ill. 468, 102 N.E.2d 749 (1951). NICTD offers no precedent to the contrary, but we have identified at least three intermediate appellate decisions holding that a trial court must upon request stay the second trial for a reasonable time pending the outcome of the appeal in the first case. *Illinois Founders Ins. Co. v. Guidish*, 248 Ill.App.3d 116, 187 Ill.Dec. 845, 848–49, 618 N.E.2d 436, 439–40 (1993); *Shaw v. Citizens State Bank*, 185 Ill.App.3d 79, 133 Ill.Dec. 266, 540 N.E.2d 1132 (1989); *Wiseman v. Law Research Serv., Inc.*, 133 Ill.App.2d 790, 270 N.E.2d 77 (1971). At least one other case has held that a stay was within the trial court's discretion due to "the potential for inconsistent judgments once the appeal [in the first case] was final...." *Golden Rule Ins. Co. v. Robeza*, 194 Ill.App.3d 468, 141 Ill.Dec. 506, 509, 551 N.E.2d 693, 696 (1990).

At one time the Illinois Supreme Court painted with a broad brush in emphasizing the importance of finality: "The rule has been settled that where a judgment in one

sometimes described as "final" to mean that it is entitled to claim preclusive and/or issue preclusive effect. The two may be the same if the judgment is in a jurisdiction, such as the federal courts, where preclusion is effected even if an appeal is pending. 18 MOORE'S FEDERAL PRACTICE, § 131.30[2][c][ii] (Matthew Bender 3d ed. 1997). In a jurisdiction such as Illinois may be, where that is not the preclusive effect, a judgment may be "final" and appealable but not "final" in the sense that it precludes relitigation in another court. We use the term "binding" to mean entitled to preclusive effect to distinguish the two.

9. In its Illinois appeal, NICTD argued that Illinois courts were required to give full faith and credit to the Indiana Court of Appeals decision adjudicating the jurisdictional issue and, accordingly, should not take jurisdiction over the arbitration. In rejecting this claim, the Appellate Court of Illinois reasoned in part that "the decision of the Illinois court to confirm the arbitration award was not in derogation of any decision then existing by the Indiana court." *Chicago SouthShore and South Bend R.R.*, 224 Ill.Dec. at 601, 682 N.E.2d at 162. This can be read as implying that, in the view of the Appellate Court, the first state to render an order confirming the award might have some preclusive value for pur-

poses of the "race to judgment" inquiry under the Full Faith and Credit Clause.

10. On July 15, 1997, the Appellate Court of Illinois denied NICTD's motion for rehearing. Ordinarily that court's judgment would now be final. *PSL Realty Co. v. Granite Inv. Co.*, 86 Ill.2d 291, 56 Ill.Dec. 368, 374–75, 427 N.E.2d 563, 569–70 (1991); *accord Petition of Kirchner*, 164 Ill.2d 468, 208 Ill.Dec. 268, 281, 649 N.E.2d 324, 337 (1995) (citing *PSL Realty Co.*), *cert. denied*, 515 U.S. 1152, 115 S.Ct. 2599–2600, 132 L.Ed.2d 846. However, when it denied rehearing the Appellate Court granted NICTD's application for a "certificate of importance." *See* Ill. S.Ct. Rule 316. Roughly the equivalent of a certified question procedure, a certificate of importance requires the Illinois Supreme Court to review NICTD's appeal, ILL.CONST. art. VI, § 4(c), and a decision from that court is still pending. Although we find no clear precedent on the point, some authority suggests this may prevent use of the intermediate appellate judgment for res judicata purposes. *Relph v. Board of Educ.*, 84 Ill.2d 436, 50 Ill.Dec. 830, 833, 420 N.E.2d 147, 150 (1981).

case has successfully been made the basis for the judgment in a second case, the second judgment will stand as res judicata, although the first judgment be subsequently reversed." *State Life Ins. Co.*, 81 N.E.2d at 880 (citations omitted). Illinois Supreme Court cases of even older vintage appear to be in accord. *See, e.g., People ex rel. Arns v. Rickert*, 159 Ill. 496, 42 N.E. 884, 886 (1896) ("The appeal merely suspends the execution of the judgment or decree, and leaves it in full force as a bar to further prosecution for the same matters determined by it.") (citation omitted). However, the Illinois Supreme Court has not made a definitive statement on the point since *State Life*.

The more recent intermediate appellate decisions holding that a stay should issue pending the outcome of the appeal in the first case were decided several decades after the *State Life* litigation. *Illinois Founders* (1993), *Shaw* (1989), and *Wiseman* (1971) all reasoned that a stay was required because the second judgment, once rendered, would be final even if the first judgment upon which it was based was subsequently reversed.[11] In that situation, the aggrieved party in the second case would be without a remedy even if it obtained appellate relief in the first case—the *State Life* scenario. *Wiseman* quoted the above language from *State Life* and purported to acknowledge the validity of its general rule, but held that a stay was required pending the outcome of the appeal in the first case. *Wiseman*, 270 N.E.2d at 79–80. *Village of Rosemont* attempted to narrow *Wiseman's* scope, concluding that *Wiseman* "actually held that one should not be able to avoid the use of a judgment merely by taking an appeal." *Village of Rosemont*, 98 Ill.Dec. at 480, 494 N.E.2d at 602. This effort to confine *Wiseman* (if it was that) was short lived. The more recent cases of *Illinois Founders* and *Shaw* relied explicitly on *Wiseman* and appear to have revived the requirement of a stay. Without citing *Village of Rosemont*, the more recent cases

also acknowledged the Illinois Supreme Court's directive in *State Life*, but held that a stay should be granted for a reasonable time pending the outcome of the appeal in the first case. *Illinois Founders*, 187 Ill. Dec. at 849, 618 N.E.2d at 440; *Shaw*, 133 Ill.Dec. at 269, 540 N.E.2d at 1135.

▇▇▇ We have used the term "res judicata" in this opinion to refer to "claim preclusion" and not in a generic sense. A further complication is introduced because Illinois appears to distinguish claim preclusion from issue preclusion, or "collateral estoppel," in determining the effect of a pending appeal. For collateral estoppel purposes a judgment is not final in Illinois until "the potential for appellate review [has] been exhausted." *Ballweg v. City of Springfield*, 114 Ill.2d 107, 102 Ill.Dec. 360, 362, 499 N.E.2d 1373, 1375 (1986) (citation omitted). Despite laying down a clear rule, *Ballweg* has been met with some criticism. *See Rogers v. Desiderio*, 58 F.3d 299, 302 (7th Cir.1995) (opining that *Ballweg* contradicted "long-settled law"); *Southeastern Ill. Elec. Co-op., Inc. v. Illinois Human Rights Com'n*, 162 Ill.App.3d 806, 114 Ill.Dec. 670, 673–75, 516 N.E.2d 825, 828– 30 (1987) (Karns, P.J., dissenting) (arguing that *Ballweg* was wrongly decided), *appeal denied*, 119 Ill.2d 575, 119 Ill.Dec. 398, 522 N.E.2d 1257 (1988). In the decade following *Ballweg*, at least three decisions involving claim preclusion, some citing *Ballweg* and some not, have allowed a second suit to proceed on the merits despite a prior judgment under pending appeal. *West Suburban Bank v. Lattemann*, 285 Ill.App.3d 313, 220 Ill.Dec. 878, 879, 674 N.E.2d 149, 150 (1996) (noting that complaint in second action had been reinstated and allowed to proceed in Illinois trial court where appeal from Illinois trial court decision in first action was still pending); *Pelon v. Wall*, 262 Ill.App.3d 131, 199 Ill.Dec. 546, 549, 634 N.E.2d 385, 388 (1994) (complaint in second action reinstated and case remanded for further proceedings consistent with the opinion); *Luckett v. Human*

---

11. Of these, only *Illinois Founders* involved the preclusive effect to be accorded an Illinois judgment that was being appealed. *Shaw* concerned a bankruptcy judgment, *Wiseman* a New York state judgment, and *Golden Rule* a California state judgment. However, none of these deci-

sions appeared to condition the availability of a stay on whether the judgment whose preclusive effect was at issue was rendered in the Illinois state courts or elsewhere. Rather, all emphasized the possibility of inconsistent judgments if the first judgment was overturned on appeal.

Rights Com'n, *210 Ill.App.3d 169, 155 Ill.Dec. 6, 10, 569 N.E.2d 6, 10 (1989) (offering as an alternative holding that because decision of federal district court involving same issues and parties was on appeal, Illinois Appellate Court was free to reach own result on merits of same issues),* appeal denied, *141 Ill.2d 543, 162 Ill.Dec. 491, 580 N.E.2d 117 (1991),* cert. denied, *502 U.S. 1113, 112 S.Ct. 1220, 117 L.Ed.2d 456 (1992).* Pelon *and* Luckett *relied on* Ballweg *without discussing the potential distinction between issue and claim preclusion. Thus, some Illinois authority would arguably support allowing NICTD's Indiana suit to go forward despite NICTD's appeal in Illinois.*

■ In the face of all of this, the U.S. Court of Appeals for the Seventh Circuit recently observed: "To be blunt, we have no idea what the law of Illinois is on the question whether a pending appeal destroys the claim preclusive effect of a judgment." *Rogers,* 58 F.3d at 302.[12] In holding that a stay was the most "prudent course" for a federal court faced with a parallel state case, *Rogers* concluded that a

> federal judge confronted with duplicative litigation need not barge ahead on the off-chance of beating the state court to a conclusion. It is sensible to stay proceedings until an earlier-filed state case has reached a conclusion, and then (but only then) to dismiss the suit outright on grounds of claim preclusion.

*Id.* (citing *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817–21, 96 S.Ct. 1236, 1246–48, 47 L.Ed.2d 483 (1976) and other cases). We reach a similar result here and conclude that full faith and credit under these circumstances requires a stay of the Indiana proceedings for a reasonable time to permit resolution of appellate proceedings in Illinois. To the extent current Illinois law of res judicata, which we are bound to follow under the Full Faith and Credit Clause, *Underwriters Nat'l Assurance Co.,* 455 U.S. at 704, 102 S.Ct. at 1365–66, does not require this result, we reach the same conclusion on grounds of

comity in light of our uncertainty as to the applicable Illinois law. A stay prevents the inequity that would arise if NICTD were to obtain a reversal or other relief in Illinois after conclusion of proceedings in Indiana predicated upon the Illinois trial court's (overturned) judgment. This is at least consistent with, if not required by, several Illinois decisions that have recognized and sought to avoid this possible injustice as well as the possibility of inconsistent judgments.

## V. Alleged Flaws in the Illinois Proceedings

NICTD attempts to repackage the Illinois judgment as a ruling grounded on NICTD's procedural default and, therefore, not a judgment on the merits. However, the ruling that is critical here is not the holding that NICTD's motion to vacate or modify the award came too late under the Illinois Uniform Arbitration Act. Rather, the essential holdings of the Illinois courts are: (1) the Illinois courts, not Indiana, had jurisdiction over a suit to confirm the award; and (2) the award was confirmed in accordance with Illinois practice. It is irrelevant that this ultimate result may have been driven by the fact that NICTD's motion to vacate or modify the award was stricken due to Illinois procedural default.

■ As its last line of defense, NICTD asserts that the general constitutional obligation to give full faith and credit to the Illinois judgment does not apply in this case because the judgment was allegedly rendered in violation of NICTD's right to due process of law. Specifically, NICTD contends that it was denied due process because it was never able to present a challenge to the merits of SouthShore's application to confirm. Assessing this claim requires some understanding of the Illinois Uniform Arbitration Act. The Act imposes no time limits on the filing of an application to confirm an arbitration award. 710 ILL.COMP.STAT.ANN. 5/11 (West 1992); *United Steelworkers v. Danly Mach. Corp.,* 658 F.Supp. 736, 737–38 (N.D.Ill.1987) (petition to confirm an award

---

12. *See also Wilson v. City of Chicago,* 900 F.Supp. 1015, 1026 (N.D.Ill.1995) (citing *Rogers* and opining that Illinois law in this area was "all

over the board"), *aff'd,* 120 F.3d 681 (7th Cir. 1997).

under the Act may be filed at any time). However, an application to vacate or modify the award, whether brought independently or in response to a motion to confirm, must be made within ninety days of the issuing of the award. 710 ILL.COMP.STAT.ANN. 5/12–13 (West 1992); *Johnson v. Baumgardt,* 216 Ill.App.3d 550, 159 Ill.Dec. 846, 850–51, 576 N.E.2d 515, 519–20 (1991). The Appellate Court of Illinois recently reaffirmed this proposition in NICTD's appeal in the Illinois proceedings. *Chicago SouthShore and South Bend R.R.,* 224 Ill.Dec. at 601, 682 N.E.2d at 162. Therefore, NICTD had until approximately November 11, 1994 to bring a motion to vacate or modify. It did not do so.

According to NICTD, the dismissal of its motion to vacate or modify violated its due process right to be heard on the merits of SouthShore's application to confirm. The extent to which conformity to due process is a prerequisite for a judgment to be given full faith and credit was dealt with tangentially in *Kremer v. Chemical Constr. Corp.,* 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982), a case decided shortly after *Underwriters Nat'l Assurance Co. Kremer* involved whether a federal court was required to give preclusive effect under 28 U.S.C. § 1738 to a New York judgment dealing with the same issues and parties. That statute, which parallels the Full Faith and Credit Clause, mandates that the acts, records, and judicial proceedings of a state be given the same credit in federal courts that they would receive in the courts of the issuing state. A federal litigant contended that a New York state court decision was not entitled to full faith and credit because New York's procedures for adjudicating his claim allegedly failed to provide him a full and fair opportunity to litigate the merits. The Court held that 28 U.S.C. § 1738 required federal courts to accord a state judgment the same credit it would be given in its own courts so long as the state, in adjudicating to judgment, satisfied the "applicable requirements" of the Due Process Clause of the Fourteenth Amendment. *Id.* at 482, 102 S.Ct. at 1898.

▮ Noting that this was a relatively undeveloped area of the law, *Kremer* drew on Full Faith and Credit Clause jurisprudence:

"[T]he Court's decisions enforcing the Full Faith and Credit Clause ... suggest that what a full and fair opportunity to litigate entails is the procedural requirements of due process." *Id.* at 483 n. 24, 102 S.Ct. at 1898 n. 24 (collecting cases). Although the Court explained that "no single model of procedural fairness" was required by the Due Process Clause, *id.* at 483, 102 S.Ct. at 1898–99, it is plain from its discussion that all that is required is an *opportunity* to fairly litigate the merits—a word used no fewer than four times. *Id.* at 482–84, 102 S.Ct. at 1898–99. No case has squarely held that *Kremer* applies to claims under the Full Faith and Credit Clause but, because *Kremer* drew on full faith and credit doctrine, we conclude it applies to interstate as well as federal-state issues.

Justice Ruth Bader Ginsburg's concurring and dissenting opinion in *Matsushita Elec. Indus. Co., Ltd. v. Epstein,* 516 U.S. 367, ——–——, 116 S.Ct. 873, 884–90, 134 L.Ed.2d 6, 26–33 (1996) further supports the conclusion that procedural due process may be a prerequisite for according a state-court judgment full faith and credit. This usually arises in the form of a challenge to the first court's jurisdiction over the person of the defendant sought to be bound. *Matsushita* involved a variant on that theme—the preclusive effect that a federal court must give to a settlement of a class-action lawsuit in a Delaware state court. Justice Ginsburg focused on whether absent members of the class had been adequately represented by the named plaintiffs and therefore could be bound by the settlement. In stressing the "centrality of the procedural due process protection of adequate representation in class action lawsuits," 516 U.S. at ——, 116 S.Ct. at 890, 134 L.Ed.2d at 33, Justice Ginsburg cited *Kremer* for the proposition that, for purposes of conforming to 28 U.S.C. § 1738, "a state-court judgment generally is not entitled to full faith and credit unless it satisfies the requirements of the Fourteenth Amendment's Due Process Clause." *Id.* at ——–——, 116 S.Ct. at 884–85, 134 L.Ed.2d at 26. Parity of reasoning would suggest the same applies to full faith and credit analysis by a sister state as a matter of constitutional doctrine. *Cf. Kremer,* 456 U.S. at 483 n. 24, 102

S.Ct. at 1898 n. 24 ("Section 1738 was enacted to implement the Full Faith and Credit Clause.... It is therefore reasonable that § 1738 be subject to no more restriction than the Full Faith and Credit Clause.") (citations omitted).

Assuming that a due process violation could strip the Illinois decision of its status under the Full Faith and Credit Clause, we see no due process violation in the Illinois proceedings. Procedural due process in this context requires only notice and a reasonable opportunity to be heard, not that the opportunity necessarily be seized or successful. NICTD does not contend that it was denied the opportunity to challenge the arbitration award within ninety days, as required by the Illinois Uniform Arbitration Act. Nor does NICTD assert that ninety days was constitutionally insufficient time to act to protect its rights in Illinois. Distilled to its essence, NICTD's claim is that Illinois courts denied NICTD the opportunity to file an untimely response. This does not provide a basis for disregarding the Illinois judgment: "A party cannot escape the requirements of full faith and credit and res judicata by asserting its own failure to raise matters clearly within the scope of a prior proceeding." *Underwriters Nat'l Assurance Co.*, 455 U.S. at 710, 102 S.Ct. at 1369 (citation omitted). Finally, NICTD attempts to avoid the consequences of this delay in the Illinois action by pointing to the timeliness of its appeal in the *Indiana* case dealing with the same subject matter. That is no answer because, as already elabo-rated, the effect of the Illinois proceeding is the controlling concern here.[13]

## VI. NICTD Cannot Relitigate the Jurisdictional Issue

NICTD's recourse is to exhaust appellate remedies in Illinois. If Illinois law is as described by the trial court, the appeal in this case amounts to a constitutionally impermissible collateral attack on the jurisdictional question NICTD lost in that forum. In a related context, the U.S. Supreme Court has indicated that the policy of finality applies with no less force to questions of jurisdiction:

> After a party has his day in court, with opportunity to present his evidence and his view of the law, a collateral attack upon the decision as to jurisdiction there rendered merely retries the issue previously determined. There is no reason to expect that the second decision will be more satisfactory than the first.

*Stoll*, 305 U.S. at 172, 59 S.Ct. at 138 (construing res judicata effect of bankruptcy court's ruling on jurisdiction on subsequent case in Illinois state court).[14] And any challenge to the merits of the Illinois decision here is equally unavailing: "[T]he fact that the rendering court may have made an error of law with respect to a particular question does not deprive its decision of the right to full faith and credit, so long as that court fully and fairly considered its jurisdiction to adjudicate the issue." *Underwriters Nat'l Assurance Co.*, 455 U.S. at 709 n. 16, 102 S.Ct. at 1368 n. 16 (citation omitted). These claims of error too must be challenged in the rendering state.[15]

13. Although not styled as a due-process violation, NICTD argued in its Illinois appeal that it should have been allowed to answer the merits of South-Shore's application to confirm. The Appellate Court of Illinois reached the same conclusion we do here—that NICTD had an opportunity to challenge the award in Illinois and failed to do so in a timely manner. *Chicago SouthShore and South Bend R.R.*, 224 Ill.Dec. at 601–02, 682 N.E.2d at 162–63.

14. *Cf. Magnolia Petroleum Co. v. Hunt*, 320 U.S. 430, 439, 64 S.Ct. 208, 213–14, 88 L.Ed. 149 (1943) (describing "clear purpose" of Full Faith and Credit Clause as "to establish throughout the federal system the salutary principle of the common law that a litigation once pursued to judgment shall be as conclusive of the rights of the parties in every other court as in that where the judgment was rendered").

15. NICTD points out that the arbitration clause in the Agreement provides that the award shall be binding "except that if either party claims that [it] is based upon an error of law it may ... institute an action at law within the State of Indiana to determine such legal issue." Based on this provision, and noting that the Agreement stipulates Indiana law as governing, NICTD contends that it is not bound by the award pending resolution of its Indiana lawsuit. SouthShore replies that arbitration awards are final even if based on an error of law. In view of the terms of the Agreement, NICTD may well have a point. However, this also is a matter that can be, and was, raised and adjudicated in Illinois, where the trial court declined to delay enforcement of the award notwithstanding NICTD's contentions.

Illinois might have concluded that as a matter of comity it should have stayed (or was required by the terms of the Agreement to stay) its consideration of SouthShore's application to confirm until Indiana courts resolved the question of governing Indiana law.[16] However, the decision to decline the exercise of jurisdiction, where it has already been found to exist, is a matter of grace and not of constitutional mandate. *Chicago, Rock Island & Pacific Ry. Co. v. Schendel,* 270 U.S. 611, 616, 46 S.Ct. 420, 422, 70 L.Ed. 757 (1926) ("Each court is free to proceed in its own way and in its own time, without reference to the proceedings in the other court.") (citation and internal quotation marks omitted). Concisely stated, the constitutionally dispositive factor here is not who sued first, but who won the race to judgment. *Id.* at 616–17, 46 S.Ct. at 422–23.

On this crucial point, the Court of Appeals erroneously relied on the absence of a full and fair hearing in Indiana. *Northern Indiana Commuter Transp. Dist.,* 666 N.E.2d at 448–49. Controlling precedent makes abundantly clear that the preclusive effect of the judgment of the first state (Illinois) does not hinge on whether NICTD had a full and fair opportunity to litigate the jurisdictional question in the second state (Indiana). Rather, the issue is whether the first court to render a judgment on the merits, in this case the Illinois trial court, afforded this opportunity. Indeed, this case illustrates what can happen when the established rules on full faith and credit are not respected. If the opinion of the Court of Appeals were allowed to stand, the result, as in *Underwriters Nat'l Assurance Co.,* would be "two state courts reaching mutually inconsistent judgments on the same issue. This is precisely the situation the Full Faith and Credit Clause was designed to prevent." *Underwriters Nat'l Assurance Co.,* 455 U.S. at 715, 102 S.Ct. at 1371.

We hold that the constitutional obligation to give full faith and credit to another state's judicial decisions requires that Indiana give the same effect to the Illinois decision as would an Illinois court. We conclude, although without conviction, that a second Illinois trial court would stay rather than dismiss NICTD's complaint. Accordingly, that is the appropriate action for the Indiana trial court to take. We note that because the Full Faith and Credit Clause makes no reference to finality, some commentators have observed that a stay pending the outcome of an appeal might be the most appropriate disposition irrespective of the law of the issuing state: "If the appeal in the rendering forum does not operate to vacate the judgment under that forum's law, the recognizing court may entertain an action on the judgment or, more usually, stay its recognition and enforcement proceedings pending the determination of the appeal." EUGENE F. SCOLES & PETER HAY, CONFLICT OF LAWS, § 24.28 at 991 n. 2 (2d ed. 1992); *cf. Griffin v. Griffin,* 327 U.S. 220, 247 n. 12, 66 S.Ct. 556, 569 n. 12, 90 L.Ed. 635 (1946) (Rutledge, J., dissenting) ("Even if the judgment were not sufficiently final for full faith and credit purposes, it nevertheless would be within the discretion of the [court] to give it effect on grounds of comity."). Because Illinois recognizes the wisdom of this course, it presents no issue in this case.

## VII. Jurisdiction of the Indiana Trial Court

Finally, this appeal originally focused on whether Indiana courts have subject-matter jurisdiction over this case.[17] The Agreement initially stipulated that (1) Indiana law governs; (2) the parties may challenge an "error of law" by instituting "an action at law within the State of Indiana to determine such legal issue"; and (3) by explicit written agreement "all arbitration proceedings shall take place"

---

16. After its jurisdictional challenge in Illinois was rebuffed, NICTD filed a motion to stay the Illinois proceedings pending the outcome of its appeal in Indiana. In a hearing on November 6, 1995, the Illinois trial court denied this motion and indicated that it would confirm the award in favor of SouthShore.

17. As noted, the trial court treated NICTD's complaint as a motion to set aside the award. NICTD's efforts to style its claim as a declaratory judgment action are unavailing. Because NICTD seeks relief from the arbitration decision, the trial court was correct to treat the complaint as a motion to set aside the award under the Indiana Uniform Arbitration Act.

in Indiana. The Indiana Uniform Arbitration Act prescribes that "[t]he making of an agreement described in section 1 providing for arbitration in this state confers jurisdiction on [an Indiana court] to enforce the agreement under this chapter and to enter judgment on an award thereunder." IND. CODE § 34–4–2–17 (1993). An agreement "described in section 1" is a "written agreement." IND.CODE § 34–4–2–1 (1993). Although the subject-matter jurisdiction of our courts is generally created by statute or constitutional provision, *State ex rel. Hight v. Marion Superior Court,* 547 N.E.2d 267, 269 (Ind.1989), these sections of the Act essentially enable the parties to control by contract whether an Indiana court may review an action to enforce or set aside the award.[18] The original written agreement therefore effectively provided the basis for jurisdiction to be vested in Indiana courts.

Although in most situations there will be only one state that qualifies for jurisdiction over the award under its version of the Uniform Act, the Indiana version does not purport to confer exclusive jurisdiction on Indiana if more than one state has jurisdiction pursuant to its own laws. In this case, SouthShore argues that the award is reviewable only in Illinois, irrespective of what the Agreement might have originally provided, because the arbitration took place there. NICTD responds that the physical location was purely for the convenience of the arbitrators and that the parties contemplated no reformation of the written agreement, which specified Indiana governing law and agreed to arbitration in Indiana. NICTD concedes that it waived the Agreement's original stipulation that "all" arbitration proceedings take place in Indiana, but contends that this did

not rise to the level of a waiver of the contract's provision for arbitration in Indiana so as to confer jurisdiction on Indiana courts.

 Arbitration provisions can be waived and the existence of waiver depends upon the circumstances of each case. *Kendrick Mem'l Hosp., Inc. v. Totten,* 408 N.E.2d 130, 134–35 (Ind.Ct.App.1980). Neither party directs us to any Indiana cases addressing the effect of a parol decision to arbitrate outside Indiana for apparent logistical convenience when the written agreement specifically provides for arbitration in Indiana. However, we agree with NICTD that these facts are too murky to constitute a basis for finding waiver of the original agreement to arbitrate in Indiana. Waiver of a contractual right requires an intentional relinquishment of a known right. *Jackson v. DeFabis,* 553 N.E.2d 1212, 1218 (Ind.Ct.App. 1990). At best there is a parol agreement here memorialized by the arbitrator that was found to be sufficient basis for jurisdiction in Illinois as a matter of Illinois law. Although NICTD waived the requirement that "all" arbitration proceedings occur in Indiana, the written agreement, indicating governing Indiana law and a right to sue in Indiana, remained intact. This is not sufficient, as a matter of Indiana law, to constitute a waiver of the explicit contractual right to seek judicial review in a court in Indiana. Nor is this an explicit written revision of the Agreement.[19]

It is of course true that conduct inconsistent with an arbitration agreement—notably filing a lawsuit in a court of competent jurisdiction—can effect a waiver of the right to arbitrate. *See, e.g., McNall v. Farmers Ins. Group,* 181 Ind.App. 501, 506, 392 N.E.2d

---

**18.** SouthShore points to cases where the contract was silent as to the locus for arbitration. In that circumstance, courts in other states have held that the location of the arbitration determines subject-matter jurisdiction under their version of the Uniform Act. *See, e.g., State ex rel. Tri–City Constr. Co. v. Marsh,* 668 S.W.2d 148 (Mo.Ct.App.1984). However, these cases deal with construction of the Act to fill a necessary void—failure to specify any jurisdiction at all. They present significantly different issues from this case that involves interpretation of the Agreement in light of an abundance of language and actions by the parties.

**19.** The Agreement prescribed that "the subject matter hereof shall be embodied in definitive agreements to be prepared and executed by the parties...." NICTD argues, and SouthShore does not appear to dispute, that this provision required amendments to the Agreement to be in writing and signed by the parties. We agree with NICTD that the parol agreement here to hold arbitration proceedings in Chicago did not meet these requirements and therefore did not constitute an amendment to the Agreement.

520, 523 (1979) (amendment to right to arbitration may be implied by acts, omissions, or conduct); *Shahan v. Brinegar*, 181 Ind.App. 39, 44–45, 390 N.E.2d 1036, 1041 (1979) (Court of Appeals would not order arbitration where parties had already litigated disputed issues in trial court). In that circumstance, however, the party filing suit has acted inconsistently with the arbitration agreement and has in effect abandoned it. There is nothing inherently inconsistent in agreeing to conduct arbitration in Chicago for convenience, but treating all other provisions of the Agreement as unaffected. Indeed, because Indiana law is specified as controlling, that is at least facially a wholly sensible approach. Accordingly, we conclude that the Indiana trial court had jurisdiction over the subject matter, even if it may be bound by full faith and credit to enter a judgment of dismissal upon final resolution of this matter in Illinois. *Chicago, Rock Island & Pacific Ry. Co.*, 270 U.S. at 616–17, 46 S.Ct. at 422–23 (where two states had concurrent jurisdiction over the same claim, the first judgment reached had to be given full faith and credit in the second state, regardless of which lawsuit was filed first).

### Conclusion

The judgment of the LaPorte Superior Court dismissing NICTD's complaint is reversed. The case is remanded to the La-Porte Superior Court to enter a stay for a reasonable time pending final resolution of NICTD's appellate review in Illinois. Depending on the resolution of that review, dismissal may or may not be appropriate.

SHEPARD, C.J., and DICKSON, SULLIVAN and SELBY, JJ., concur.