# FOR PUBLICATION

ATTORNEY FOR APPELLANTS:

**JOHN A. CREMER**
Cremer & Cremer
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**JEFFREY S. DIBLE**
**MAGGIE L. SMITH**
Frost Brown Todd LLC
Indianapolis, Indiana

**FILED**

Jan 04 2012, 9:06 am

*[signature]*

**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN THE MATTER OF THE ESTATE OF FLORIAN T. LATEK, | ) | |
| | ) | |
| | ) | |
| NICHOLAS G. GRAPSAS, Cook County, Illinois Public Administrator of the Domiciliary Estate of Florian T. Latek, and NICHOLAS PADEZAN, | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| Appellants, | ) | |
| | ) | |
| vs. | ) | No. 64A05-1103-ES-112 |
| | ) | |
| GERALD RONNEAU, Successor Personal Representative of the Estate of Florian T. Latek in Porter County, Indiana | ) | |
| | ) | |
| | ) | |
| | ) | |
| Appellee. | ) | |

---

APPEAL FROM THE PORTER SUPERIOR COURT
The Honorable Roger V. Bradford, Judge
Cause No. 64D01-0912-ES-12797

---

**January 4, 2012**

**OPINION - FOR PUBLICATION**

**FRIEDLANDER, Judge**

In this interlocutory appeal, Nicholas Grapsas, the Illinois Public Administrator of the Domiciliary Estate of Florian T. Latek (Illinois Public Administrator), and Nicholas Padezan[1] (collectively, Appellants) challenge the trial court's order denying their Motion to Dismiss a Petition for Probate of Will and for Issuance of Letters Testamentary filed by James S. Bozik[2] in the Porter Superior Court and separate order admitting to probate the Last Will and Testament of Florian T. Latek (Latek's Will). Appellants present four issues for our review, which we consolidate and restate as:

1.      Do principles of res judicata or full faith and credit apply so as to preclude the probate of Latek's Will in Indiana?

2.      Was sufficient proof submitted to permit Latek's Will to be admitted to probate in Indiana?

3.      Did the trial court abuse its discretion in naming Bozik personal representative of Latek's Estate?

We affirm.

In 2009, Florian T. Latek owned his family's thirty-nine acre farm in Porter County, Indiana, but was living in Chicago (Cook County), Illinois, where he also owned real and personal property. On February 20, 2009, Latek enlisted the help of his close friend, Eugene Josef, to assist him in drafting a document that he expressly denominated as his "Will."[3] *Appellants' Appendix* at 111. Latek's Will disposed of Latek's Illinois property as well as his real property located in Indiana. According to Josef, Latek made four identical copies of this

---

[1]  Padezan is an intestate heir.

[2]  Bozik filed a request to withdraw as personal representative of Latek's Indiana Estate, which request was granted by the trial court the same day. On January 7, 2011, Gerald Ronneau was appointed as the successor personal representative of Latek's Estate in Indiana. Ronneau is a party to this appeal.

document. Latek signed all four copies. In his purported will, Latek acknowledged that he should get the document notarized, but explained that he did not trust notaries and that he was instead including his Army Serial number, which he hoped would be "good for any legal matters." *Id*. Latek had some of the copies of his purported will witnessed by third parties, but at least one copy was not witnessed. Latek mailed the signed copies of his purported will to persons or entities named therein, and also put an unwitnessed copy behind a safe located on the family farm in Porter County, Indiana. Latek died on April 4, 2009.

Illinois Proceedings: Believing Latek died without a will, the Illinois Public Administrator became involved in the handling of Latek's Estate. The Illinois Public Administrator contacted Attorney Bozik and requested information about Latek's assets. Attorney Bozik had not seen a copy of Latek's Will and was, at that time, unaware that such existed. Attorney Bozik therefore cooperated with the Illinois Public Administrator as he began to handle what was believed to be an intestate estate.

On August 17, 2009, the St. Paul's Senior Center received a letter from Josef in which Josef indicated that he was now living in Poland, but had recently returned to Chicago and learned that Latek had passed away. Josef indicated that he had helped Latek draft his will and inquired of St. Paul's as to whether it had received a copy of Latek's Will and whether Latek's wishes as set forth therein had been carried out. As a result of this letter from Josef to St. Paul's, Bozik became aware that Latek had in fact drafted a document Latek deemed to

---

[3] In the first paragraph of a letter addressed to "Attorney Jim Bozcik [sic] and director Or administrator of the St. Pauls' Senior Care Center," Latek wrote, "This is my Will." *Appellants' Appendix* at 111.

be his Will and that a copy of the Latek's Will could be found behind the safe located on the family farm in Indiana.

Bozik sought assistance from the Porter County Sheriff's Office to secure entry into the family farm, where the unwitnessed copy of Latek's Will was found behind a safe as indicated in Josef's letter. Bozik provided the unwitnessed copy of Latek's Will to the Illinois Public Administrator, who then deposited Latek's Will with the Clerk of the Circuit Court, Probate Division, Chicago, Illinois (the Illinois Court), on August 31, 2009. On October 23, 2009, the Illinois Public Administrator filed a Petition for Letters of Administration in the Illinois Court. The Illinois Public Administrator's position was that Latek's failure to satisfy Illinois requirements for self-proving a will, which include the requirement that the will be notarized, meant that Latek's Will was invalid and that Latek's Estate should proceed intestate. The matter was set for hearing on November 25, 2009 before the Illinois Court.

On October 30, 2009, Bozik deposited with the Illinois Court a document purporting to be Latek's Will that contained witness signatures. Bozik then attended the November 25 hearing and explained what had happened to date regarding the document purporting to be Latek's Will. At the conclusion of that hearing, the Illinois Court entered an order giving Bozik sixty days to locate the witnesses to Latek's Will and provide a formal Proof of Will. The Illinois Court declared that if Bozik could not locate the witnesses to Latek's Will, then Latek's Estate would proceed on an intestate basis.

Because Bozik did not file a Proof of Will within sixty days of the November 25 hearing, the Illinois Court entered an order appointing the Illinois Public Administrator as

4

Representative of Latek's Intestate Estate on January 28, 2010. Letters of Administration were issued to the Administrator that same day. On May 25, 2010, the Illinois Court entered an order denying probate of Latek's Will because it failed to conform to Illinois's self-proving requirements and because the witnesses' signatures could not be validated by testimony or by a formal attestation clause as required by Illinois law. The administration of Latek's Estate in Illinois has since proceeded intestate, with Latek's first cousins, first cousins once removed, and first cousins twice removed to inherit all distributable probate assets having an Illinois situs, i.e., personal property owned by Latek and real property situated in Illinois.

Indiana Proceedings: On December 14, 2009, Bozik filed in the Porter Superior Court (the Indiana Court) a Petition for Appointment of Local Personal Representative along with a copy of the document purporting to be Latek's Will. Through this petition, Bozik did not seek to have Latek's Will admitted to probate in Indiana. Rather, Bozik informed the Indiana Court of the sixty-day deadline set by the Illinois Court to prove Latek's Will and requested only ancillary administration, subject to a later request to probate Latek's Will upon sufficient proof. On December 14, 2009, the Indiana Court entered an order appointing Bozik as local personal representative, but did not admit Latek's Will to probate.[4]

On January 20, the Illinois Public Administrator filed a Petition for Appointment of Local Personal Representative in the Indiana Court, and the petition was set for hearing on

---

[4] On December 28, 2009, Bozik filed a motion in the Indiana Court to withdraw as administrator of the ancillary estate of Latek, which the Indiana Court granted.

May 27, 2010.[5] On May 20, 2010, Bozik filed in the Indiana Court a Petition for Probate of Will and Issuance of Letters Testamentary, seeking probate of Latek's Will to the extent it dealt with Latek's real property located in Indiana. As part of the probate petition, Bozik averred under penalties of perjury that he was familiar with Latek's handwriting and signature and that he recognized the signature on Latek's Will to be Latek's signature.

On June 16, 2010, the Illinois Public Administrator filed a motion to dismiss Bozik's probate petition asserting that because the Illinois Court had already determined Latek's Will to be invalid under Illinois law, the Indiana Court was precluded under the doctrines of res judicata and full faith and credit from deciding the same issue. The Illinois Public Administrator also argued that dismissal was appropriate because Bozik lacked standing to pursue probate of Latek's Will.

A hearing on all pending matters was held by the Indiana Court on June 17, 2010. At the hearing, no evidence was presented, and the parties argued only their respective positions as to application of res judicata, full faith and credit, and standing. At the conclusion of the hearing, the Indiana Court requested the parties submit further briefs on the issues addressed during the hearing. On September 16, 2010, after having received supplemental briefs from the parties, the Indiana Court entered an order denying the Illinois Public Administrator's motion to dismiss. The same day, the Indiana Court entered a separate order admitting Latek's Will to probate in Indiana and finding Bozik qualified to administer Latek's Estate.

---

[5] The May 27 hearing was continued upon motion filed by one of the parties.

On October 18, 2010, the Illinois Public Administrator filed a motion to correct error, which was deemed denied pursuant to Ind. Trial Rule 53.3 on December 2, 2010.[6] On February 10, 2011, the parties filed a "Second Joint Belated Motion to Certify Orders for Interlocutory Appeal Pursuant to Appellate Rule 14(B)(1)," which the Indiana Court granted.[7] This court accepted jurisdiction over this interlocutory appeal on April 15, 2011.

1.

Appellants argue that the doctrines of res judicata and full faith and credit preclude the Indiana Court from determining the validity of Latek's Will under Indiana law when the Illinois Court had already rendered a judgment refusing probate of Latek's Will under Illinois law because the will failed to satisfy Illinois law as to proof of proper execution and attestation.

Latek's Estate urges this court to adopt the majority rule, which provides that title to and disposition of real estate either by deed or will is governed by the law of the state where the land is situated. Latek's Estate maintains that under the majority rule, the Illinois judgment that Latek's Will was invalid is not binding upon the Indiana court insofar as the Indiana court has been asked to consider the validity of Latek's Will as it pertains to disposition of his real property located in Indiana.

Latek's Estate does not dispute that the Illinois Court's determination is binding and conclusive as to the real and personal property located in Illinois. Further, Latek's Estate

---

[6] The Illinois Public Administrator and Padezan filed a Verified Complaint to Contest Will with the Indiana Court on December 14, 2010.

[7] The Indiana Court denied the parties' first belated request to certify its orders for interlocutory appeal.

7

agrees that had the Illinois Court admitted Latek's Will to probate and the Illinois Public Administrator thereafter complied with Indiana statutes by filing proof of that admission in an Indiana court, such admission would have been binding and conclusive as to Latek's real property located in Indiana. Here, however, the Illinois Court did not admit Latek's Will to probate. The issue thus presented is: when a testator dies while owning real property in Indiana, what is the effect of an order from the domiciliary state denying probate of a testator's will because the will failed to meet the state of domicile's statutory execution requirements on the disposition of real property located in Indiana?

We first consider how the majority rule has been interpreted and applied by courts across the nation. In *In re Barrie's Estate*, 73 N.E.2d 654 (Ill. Ct. App. 1947), the testator owned real property in Iowa, but was domiciled in Illinois at the time of her death. After the testator's will was denied probate in Illinois, some heirs requested that the Illinois court permit them to withdraw the will from the Illinois clerk in order to submit the testator's will for probate in Iowa. In their petition the heirs claimed that "notwithstanding the fact that said instrument has been denied probate in Illinois it is a valid and enforceable will as to real estate in the State of Iowa . . . ." *Id*. at 655. The Illinois court agreed, holding that "title to and disposition of real estate either by deed or will is governed by the law of the State where the land is situated." *Id.* at 656. The Illinois court further noted that "'[w]here a testator, by a single will, devises lands lying in two or more states, the courts of such states will, respectively, construe it, as to the lands situated in them respectively, in the same manner as if they had been devised by separate wills.'" *Id*. (quoting *McCartney v. Osburn*, 9 N.E. 210, 212 (1886)).

In *French v. Short*, 151 S.E.2d 354 (Va. 1966), the testator was domiciled in Florida but also owned real property in Virginia. A Florida court determined that the testator's purported will could not be admitted to probate in that state because it was unwitnessed and therefore did not comply with Florida's statute of wills. The testator's will was thereafter presented to a Virginia court for probate of the real property located in Virginia, and the Virginia court held that the testator's will satisfied Virginia law as to the execution requirements for a will and therefore admitted the testator's will to probate.

On appeal, it was argued that the Virginia court must give full faith and credit to the Florida court's determination that the purported will was ineffectual to pass either real or personal property. The Virginia Supreme Court agreed that Virginia courts must recognize the Florida determination insofar as it related to the testator's personal property. With regard to the testator's real property located in Virginia, the court noted that Virginia law provided that real estate passes according to the law of the state where it lies. Citing Va. Code Ann. § 64-55 (1950).

With regard to the Florida court's determination, the Virginia Supreme Court noted that the Florida probate court's inquiry was limited in that it simply inquired as to the validity of the testator's will insofar as it affected personal property within its jurisdiction. The Virginia court thus found that the Florida court's determination did not amount to a finding that the testator died intestate with regard to his Virginia real estate. The Virginia Court further found that Virginia has the right and power to make an *in rem* determination regarding whether real estate within its borders shall pass under a decedent's will or the intestate laws of Virginia. The Virginia Court thus held: "Neither the full faith and credit

9

clause of the United States Constitution (Article IV, Section 1), nor the principle of res judicata, requires Virginia to recognize a Florida holding that a decedent died intestate as to his Virginia real estate." *French v. Short*, 151 S.E.2d at 359.

In *In re Briggs' Estate*, 134 S.E.2d 737 (W.Va. 1964), the testator was domiciled in Michigan at the time of his death, and included in his estate was real property he owned in West Virginia. The Michigan courts refused to admit the testator's will to probate because it did not comply with Michigan law as to formalities and ordered the testator's estate be distributed through intestate succession. The testator's will did satisfy West Virginia law, however, and was admitted to probate in West Virginia notwithstanding the Michigan court's prior determination. The West Virginia Court held:

> The general rule is that a determination of the validity or invalidity of a will by a court of the testator's domicile is not conclusive on that question in relation to real estate situated in another state, either upon principles of *res judicata* or the full faith and credit provision. This is true "because (1) the foreign court has no jurisdiction or power to pass upon the title to real property not found within its territorial limits, and the constitutional provision presupposes a judgment or decree rendered by a court of competent jurisdiction; and (2) the decree of probate has no effect even in that state upon the title of real estate elsewhere, and the constitutional provision does not require the giving to foreign judgments greater effect than they have at home."

*Id*. at 740. The court thus concluded that the validity or invalidity of the testator's holographic will was to be determined by the laws of the State of West Virginia insofar as it related to the decedent's real estate in West Virginia.

Other courts have addressed this issue and have reached the same result. *See, e.g., Higgins v. Eaton*, 202 F. 75 (2nd Cir. 1913), *cert. denied*; *In re Gift's Estate*, 232 P.2d 328 (Mont. 1951). Recent cases have also addressed this issue and discussed the principles

underlying the majority rule.  *See, e.g., Marr v. Hendrix*, 952 S.W.2d 693, 695 (Ky. 1997) (noting that the rationale for the rule is that "the disposition of property is governed by the law of the state where property is located, rather than by the law of a foreign state.  Hence, the refusal to enforce a foreign probate decree pertaining to an invalid will does not violate the full faith and credit clause"); *Chaney v. Cooper*, 954 S.W.2d 510, 520 (Mo. Ct. App. 1997) ("[t]he U.S. Constitution requires that judicial proceedings in other states be given full faith and credit in Missouri as they would in the state from which they had been rendered.  It is universally held that for 'a will to be of any validity as a transfer of title to land, [it] must be executed, attested, and probated in the manner prescribed by the law of the state where the land is located.'  Following this general principal of law, a state does not have to give full faith and credit to the devise of real property as a result of an adjudication of a will by another state"); *In re Estate of Stein*, 896 P.2d 740, 745 (Wash. Ct. App. 1995) ("[t]he courts of a decedent's domicile do not have jurisdiction to control devolution of real property held in another state; therefore, the state in which real property is located is not required to give full faith and credit to a decision of another state regarding probate of such real property.  When a testator executes a will devising lands in two or more states, the courts in each state will construe it as to the lands located therein as if devised by separate wills").

While both parties assert that this is a matter of first impression in Indiana, we find that Indiana has in fact already recognized and evinced an intent to follow the majority rule.  In *Evansville Ice & Cold-Storage Co. v. Winsor*, 148 Ind. 682, 48 N.E. 592 (1897), our Supreme Court explained the difference between the treatment of personal property and real property under Indiana probate law.

11

The rule as to personal property is that the law of the place where the testator is domiciled at the time of his death governs as to the capacity of the testator to make a will, and as to the forms to be observed in its execution and revocation, and as to its validity in every respect. Such questions as to bequests of personal property being governed by the law of the domicile of the testator, they are adjudicated when the will is admitted to probate in such jurisdiction, and the same is conclusive. As to such property, the probate of the will in the state where the testator was domiciled at the time of his death is, under the constitution of the United States, entitled to full faith and credit in every other state. . . . *But it is settled that title to and the disposition of real property, whether by deed, a last will, or otherwise, must be governed exclusively by the law of the country where it is situated.* The law where the land lies governs not only as to the forms to be observed in executing the will, but as to the capacity or incapacity of the testator to make a will. . . . Title to land by devise can only be acquired when the will is duly proved and recorded, according to the law of the state in which the land is situated. The probate of a will in one state gives no title to land devised situate in another state.

*Id.*, 148 Ind. 682, 48 N.E. at 594 (emphasis supplied). The majority rule that "the probate of a will in another state has no effect on the title of real estate in Indiana unless the will is duly admitted to probate in this state or filed and recorded as a foreign will in compliance with our laws" was also recognized in *Duckwall v. Lease*, 106 Ind. App. 664, 20 N.E.2d 204, 208 (1939) and more recently in *Estate of Hofgesang v. Hansford*, 714 N.E.2d 1213, 1217 (Ind. Ct. App. 1999).

As has been applied by courts across the nation for over a century and as recognized by our Supreme Court as long ago as 1897, we conclude that Indiana adheres to the majority rule. We therefore conclude that under the majority rule, the Illinois Court's denial of Latek's Will to probate because it failed to comply with Illinois's statutory execution requirements has no effect on the subsequent admission and probate of Latek's Will in Indiana as it concerns the disposition of real property located in Indiana. Principles of res judicata and full faith and credit have no application in matters involving probate and title to

12

realty.

Appellants cite *In re Nye's Estate*, 299 N.E.2d 854 (Ind. Ct. App. 1973) in support of their claim that res judicata and full faith and credit require dismissal of the probate petition. We find that case inapposite to the issue now before us. In *Nye's Estate*, the issue before the court was whether principles of res judicata prevented the relitigation in the Indiana court of the determination by a Florida court that the decedent's Florida will was valid under the laws of Florida. The *Nye* court held that under principles of res judicata and collateral estoppel, the Florida court's determination as to the due execution of the Florida will was binding on the Indiana court. The *Nye* court was not called upon to determine the validity of a will in Indiana for purposes of passing title to real estate located in this State. The *Nye* court's holding is not inconsistent with and does not affect application of the majority rule set forth above.

We further disagree with Appellants that Indiana's foreign wills statutes preclude an Indiana court from determining the validity of a will as it relates to disposition of real property located in Indiana where such will disposing of such property has been found void under another state's laws. As noted above, Indiana case law recognizes that "the probate of a will in another state has no effect on title of real estate in Indiana unless the will is duly admitted to probate in this state or filed and recorded as a foreign will in compliance with our laws." *Estate of Hofgesang v. Hansford*, 714 N.E.2d at 1217.

To be sure, the Indiana Probate Code, adopted in 1953, provides a mechanism by which a foreign will admitted to probate in another state can be filed and recorded in Indiana such that the determinations as to a will's admission to probate by foreign courts are

13

applicable in this state. Ind. Code Ann. § 29-1-7-25 (West, Westlaw current through 2011 1st Regular Sess.) provides: "Any will that has been proved or allowed in any other state or in any foreign country, according to the laws of that state or country, may be received in this state within three (3) years after the decedent's death . . . ." I.C. §§ 29-1-7-26 and -27 set forth the manner in which a foreign will is received and recorded in this state. A copy of a foreign will and the probate thereof may be presented to a court in a county having jurisdiction, and

> if said court shall be satisfied that the instrument ought to be allowed as the last will of the deceased, such court shall order the same to be filed and recorded by the clerk, and thereupon, such will shall have the same effect as if it had been originally admitted to probate and recorded in this state.

I.C. § 29-1-7-27.

We agree with Latek's Estate that the foreign will statutes are not applicable to the instant case for the simple reason that Latek's Will was not proved or allowed by the Illinois Court. By the clear words used in the foreign wills statute, foreign wills can be received and recorded by an Indiana court only where they have been proved and allowed by the foreign court. The converse is that a foreign will that is not proved and allowed may not be received and recorded by an Indiana court under the foreign wills statute. There is no other provision within the probate code that sets forth the manner in which a will not proved or allowed in a foreign state can be recorded in Indiana.

We do not agree with Appellants' contention, without citation to authority, that this interpretation of the foreign wills statute simply "cannot be so." *Appellants' Brief* at 16. Indeed, we find the analysis of the Kentucky Supreme Court rejecting the contention

14

advanced here by Appellants to be persuasive. In *Second Nat'l Bank of Ashland v. Thomson*, 455 S.W.2d 51 (Ky. 1970), the testator owned real property in Kentucky but was domiciled in Texas at the time of his death. A Texas court declared the decedent's will to be void and refused to admit the purported will to probate. The Kentucky Supreme Court addressed the issue of whether Kentucky courts should give full faith and credit to foreign judgments that may affect the title to real estate in Kentucky. The court noted that statutory provisions related only to the filing and recording of foreign wills probated in another state. The statutes were silent, however, as to a will that has been held void and refused probate by another state. Because of the absence of statutory provisions on how to handle a will that has been found void by another state, the court therefore concluded that the Kentucky court need not give full faith and credit to the judgment of the Texas court determining the decedent's will to be void.

We interpret the Indiana foreign will statutes as reaching the same result. The Indiana statutes are silent as to the manner in which a foreign will determined to be void in a foreign state can be recorded in an Indiana court. The majority rule fills this gap by providing that the effect of another state's determination that a will is invalid has no effect on the validity of the will in Indiana as it pertains to the disposition of real property located in Indiana.

2.

Appellants argue that there was insufficient proof submitted to the trial court to permit Latek's Will to be admitted to probate in Indiana. Generally, the Probate Code requires at least one attesting witness testify. I.C. § 29-1-7-9 (West, Westlaw current through 2011 1st Regular Sess.). This requirement is unnecessary in two circumstances, one of which is

15

implicated in this case. I.C. § 29-1-7-10 (West, Westlaw current through 2011 1st Regular Sess.) provides:

> [i]f none of the subscribing witnesses to a will can be found, or if all are dead, absent from the state, or incapacitated, one (1) or more of these situations shall be proved to the satisfaction of the court before evidence of the handwriting of the testator or of the subscribing witnesses provided for in section 9 of this chapter shall be admitted in evidence.[8]

On appeal, Appellants maintain that Bozik did not present sufficient evidence in accordance with the requirements of I.C. § 29-1-7-10 because he failed to prove "to the satisfaction of the court" what steps he took in attempting to locate the alleged witnesses to Latek's Will or that the witnesses were deceased. The Appellants further argue that Bozik's assertion (under penalties of perjury) in the petition for probate of Latek's Will is legally insufficient to establish that the signature on the will was Latek's signature.

Appellants' motion to dismiss is for all intents and purposes an objection to probate of Latek's Will in Indiana. As grounds therefore, Appellants asserted the doctrines of res judicata, full faith and credit, and standing. The Indiana court held a hearing on the petition for probate and Appellants' motion to dismiss, at which no evidence was presented, but the parties argued their respective positions as to application of res judicata and full faith and credit and the issue of standing. At the conclusion of the hearing, the Indiana court granted the parties thirty days to file briefs addressing their respective positions with regard to the issues addressed during the hearing.

In Appellants' supplemental memorandum in support of their motion to dismiss

16

submitted after the hearing, Appellants argued for the first time that the evidence before the court was insufficient to permit Latek's Will to be admitted to probate in Indiana. Bozik responded in a surreply to the Appellants' motion to dismiss and set forth the efforts he undertook in attempting to locate the witnesses. Appellants maintain that we may not consider Bozik's assertions in his surreply because such was not evidence before the trial court. After the Indiana court issued its order admitting Latek's Will to probate, Appellants filed a motion to correct error in which they asserted their objection to probate based upon insufficient evidence to permit probate of Latek's Will under Indiana law. The trial court did not modify its order and the motion to correct error was deemed denied by operation of T.R. 53.3.

We need not address Appellants' argument on appeal because we conclude that the Appellants did not properly preserve the issue for appellate review. Appellants did not object to probate of the Latek's Will on grounds that there was insufficient evidence concerning Bozik's efforts to locate witnesses or in any way challenge Bozik's assertion under penalties of perjury that the signature on Latek's Will was in fact Latek's until after the hearing before the Indiana Court on the issue of Appellants' motion to dismiss and the petition to probate Latek's Will. An objection in a supplemental brief after the matter has been challenged before the court on other grounds is not an objection before the court. The objection was presented to the Indiana Court for the first time in a motion to correct error. We find that such objection is too late and is therefore waived. *See Cook v. Loftus*, 414 N.E.2d 581 (Ind.

---

[8] The second circumstance is found under I.C. § 29-1-7-13(c) (West, Westlaw current through 2011 1st Regular Sess.), which provides that a self-proving will may be admitted to probate without the testimony of

17

Ct. App. 1981).

Indeed, had Appellants presented their objection at the proper time such that Bozik could have responded and come forth with his evidence purporting to prove what is required by statute, the matter could have been addressed by the Indiana court. As it is, Appellants' belated objection to probate of Latek's Will precluded the introduction of any evidence at the hearing by Latek's Estate, including evidence of Bozik's efforts to locate witnesses that Bozik has since clearly indicated he has expended. The trial court was therefore never provided an opportunity to consider Bozik's evidence and determine whether it met the statutory requirements.[9]

---

an attesting witness.

[9] We do note that Bozik made a statement to the court during the hearing to the effect that he had tried to locate the witnesses to Latek's Will, but that they "have not yet been located." *Transcript* at 13.

3.

Appellants argue that Bozik lacks standing to be appointed as personal representative of Latek's estate. Specifically, Appellants argue that Bozik does not qualify under I.C. § 29-1-10-1(a)(1-5) (West, Westlaw current through 2011 1st Regular Sess.) as a person to whom letters testamentary or letters of general administration may be granted. Appellants assert that if Bozik can be found to qualify under the statute, at best, he may qualify under subsection (a)(6) which provides for "any other qualified person." In any event, "any other qualified person" is lower in priority than a devisee in a will that has been admitted to probate (subsection (a)(3)) or an heir or individual appointed by an heir (subsection (a)(5)). Appellants claim that because Bozik lacks standing, he could not present Latek's Will for probate and, as a consequence, the trial court's order admitting Latek's Will to probate and appointing Bozik as personal representative was erroneous. In response, Latek's Estate argues that Bozik qualified to serve as personal representative of Latek's Will because a fair reading of Latek's Will evidences Latek's intent that Bozik serve as executor, which is given highest priority under subsection (a)(1). We agree with Latek's Estate.

"A court with probate jurisdiction has great latitude and wide discretion in the appointment and removal of personal representatives and administrators. Its decision in such a matter will not be disturbed on appeal unless an abuse of that discretion is clear." *Matter of Swank's Estate*, 176 Ind. App. 182, 375 N.E.2d 238, 240 (1978). In construing a will the paramount objective is to determine and give effect to the testator's true intent as expressed in the will. *Myers v. Ellerbusch*, 746 N.E.2d 408 (Ind. Ct. App. 2001). We must consider and give effect to every provision, clause, and term of the will to determine that intent. *Id.*

19

The testator's intent is controlling and must be given effect so long as it is not contrary to law. *Id.* In other words, we attempt, if at all possible, to uphold and to give effect to the testator's intent rather than have that intent frustrated. *Id.*

The Probate Code provides that the trial court may appoint as personal representative and issue letters testamentary to "the executor or executors designated in a will that has been admitted to probate." I.C. § 29-1-10-1(a)(1). An executor is defined as "[a] person appointed by a testator to carry out the directions and requests in his will, and to dispose of the property according to his testamentary provisions after his decease." Black's Law Dictionary (Sixth Ed. 1990), p. 570. Considering Latek's Will, we note that Latek addressed his will in part to "Attorney Jim Bozcik [sic]." *Appellants' Appendix* at 15. In the body of his will, Latek stated, "As my lawyer. [sic] This is what I want done and request that you follow my Instructions." *Id.* Latek then set forth how and to whom he wanted his property distributed after his death and an explanation for his chosen distribution. In closing his will, Latek stated, "I trust that you [referring to Bozik] will do this for me and present this to at [sic] the probate court. Tell the judge that we were classmates and do the very best you can as you did for me when Walter died." *Id.*

The language Latek used in his will evidences his intent that his attorney and long-time friend, Bozik, serve as executor of his estate. To be sure, Latek directed that Bozik follow his instructions as set forth in his will and present his will to the probate court. Although Latek never expressly referred to Bozik as "executor" or "personal representative" in his will, Latek's intent that Bozik serve in such capacity is evident given a fair reading of the language Latek used in his will. The trial court did not abuse its discretion in appointing

20

Bozik as personal representative of Latek's Estate.[10]

Judgment affirmed.

DARDEN, J., and VAIDIK, J., concur.

---

[10] As noted in footnote 2, *supra*, Ronneau has been appointed as successor personal representative of Latek's Estate. Appellants do not challenge Ronneau's capacity to serve as personal representative.