# FOR PUBLICATION

ATTORNEYS FOR APPELLANTS:

**ERIC C. BOHNET**
Indianapolis, Indiana

**NINAMARY BUBA MAGINNIS**
Louisville, Kentucky

ATTORNEY FOR APPELLEE:

**JASON A. LOPP**
Wyatt Tarrant & Combs, LLP
New Albany, Indiana

FILED

May 22 2014, 10:42 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ROBERT R. SETREE, II, and | ) | |
| BEVERLY L. SETREE, | ) | |
| | ) | |
| Appellants-Defendants, | ) | |
| | ) | |
| vs. | ) | No. 10A01-1311-MF-485 |
| | ) | |
| RIVER CITY BANK, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE CLARK CIRCUIT COURT
The Honorable Daniel E. Moore, Judge
Cause No. 10C01-1201-MF-69

**May 22, 2014**

**OPINION - FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellants-Defendants, Robert R. Setree, II and Beverly L. Setree (the Setrees), appeal the trial court's summary judgment in favor of Appellee-Plaintiff, River City Bank (River City), granting River City the right to foreclose on the Setrees' real estate.

We affirm.

## ISSUES

The Setrees raise three issues on appeal, one of which we find dispositive and which we restate as:  Whether principles of full faith and credit required the trial court to consider the judgments of a Kentucky court *res judicata* to the instant cause.

## FACTS AND PROCEDURAL HISTORY

At all times relevant to this action, the Setrees were the owners of several pieces of real estate located in Kentucky and Indiana.  On September 2, 2005, the Setrees executed a promissory note in favor of River City for the principal sum of $45,667.00.  On October 4, 2006, the Setrees executed a second promissory note in favor of River City for the principal amount of $15,484.19.  Both notes were secured by mortgages on real estate owned by the Setrees at 815 Holly Drive in Jeffersonville, Indiana and at 2095 Virginia Avenue and 5116 Roederer Drive in Louisville, Kentucky.

On November 2, 2007, the Setrees executed a third promissory note (2007 Note) by which they promised to pay River City the principal sum of $91,380.50.  To secure payment on the 2007 Note, the Setrees gave River City a security interest in property located at 2061 Cardinal Lane, in Jeffersonville, Indiana (the Cardinal Lane Property), as

2

well as the property located at 5116 Roederer Drive, in Louisville, Kentucky. Contemporaneously with the execution of the 2007 Note, the Setrees executed a mortgage in favor of River City on the Cardinal Lane Property. Pursuant to the provisions of the 2007 Note, the Setrees were required to pay all taxes related to the collateral securing it when due.

In 2009 and 2010, the Setrees omitted to pay Indiana real estate taxes on the Cardinal Lane Property, bringing the Setrees in default of the terms of their 2007 Note. As a result of their failure to pay the real estate taxes, the Cardinal Lane Property was sold at a tax sale in the fall of 2010. On September 29, 2011, River City paid $9,455.73 to redeem the Cardinal Lane Property from the tax buyer and an additional $3,116.55 in taxes to bring the delinquent real estate taxes current.

The mortgage securing the 2007 Note included a right to cure provision, which is triggered if a breach of one of the conditions of the Note is curable. Specifically, the clause states:

> **Right to Cure**. If such a failure is curable and if [River City] has not given a notice of a breach of the same provision of this Mortgage within the preceding twelve (12) months, it may be cured (and no Event of Default will have occurred) if [the Setrees], after [River City] sends written notice demanding cure of such failure: (a) cures the failure within twenty (20) days; or (b) if the cure requires more than twenty (20) days, immediately initiates steps sufficient to cure the failure and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

(Appellee's App. p. 28). On October 13, 2011, the Setrees, by certified mail, notified River City that

3

We know these taxes are our responsibility. We notified [River City] more than a year ago to let you know we didn't have the means to pay them because they had increased so much. We asked if you could pay them and do some refinancing so our payments would be lower and we would be able to handle them.

(Appellee's App. p. 34).

By virtue of cross-default provisions in the notes, the Setrees' nonpayment of real estate taxes on the Cardinal Lane Property also triggered River City's right to accelerate all debts due and owing under the other two notes and to foreclose on all of the mortgages it held on the Setrees' various properties. River City exercised its right by initiating four different foreclosure actions under the mortgages related to the three notes: the current action, a companion case—at the time of filing the instant appeal—pending in Clark Circuit Court No. 2, and two actions in Jefferson Circuit Court, Kentucky.

On September 25, 2012, the Jefferson Circuit Court entered a final judgment and order of sale in favor of River City with respect to the Setrees' property on Roederer Drive in Louisville, Kentucky. On January 15, 2013, the Jefferson Circuit Court entered a similar order with respect to the property on Virginia Avenue. In its order of January 15, 2013, the Jefferson Circuit Court concluded, in pertinent part, as follows:

> The record is undisputed that [the Setrees] failed to pay property tax on the Indiana property. As was noted by Commissioner Harrison in the Commissioner's Report, [the Setrees] have repeatedly alleged that failure to pay Indiana taxes in no way constituted a default under the terms of any of their mortgages, and that [the Setrees] argue that the default, if one occurred, on the payment of an Indiana debt could not constitute a default on regard [to] the Kentucky collateral. Commissioner Harrison also noted that the [Setrees] argue that they were never given notice of any default and were never given an opportunity to cure the same. [The Setrees] continue to make such arguments in their exceptions and objections to the

4

Commissioner's Report.  As was stated by Commissioner Harrison in the Commissioner's Report:

> Failure to pay the taxes on the Indiana property constituted a default on the note secured by such property[.]  That default authorized foreclosure on the properties securing payment of that note.  Both of the notes secured by the subject property herein contained a provision stating that the notes will be in default if [the Setrees] fail "to make any payment when due under this note or any note payable to [River City]."  Default under the terms of one note thereby constitutes a default on all notes payable to that lender, including those note [sic] set out herein.

> Although [the Setrees] deny any default, they also argue that if a default occurred, it occurred in Indiana in regard to an Indiana property and only that Indiana property can be foreclosed.  [The Setrees] [have] failed to present any statute or case law supporting this argument.  [The Setrees'] position simply ignores the cross-default provisions in the various notes.  As aforesaid [River City] was entitled to accelerate all debts owed to it by the [Setrees] once any of these notes were in default.  In the absence of law or some agreement between the parties, [River City] is not obligated to look to certain collateral for satisfaction of its claim.  Upon the acceleration of the debt, [River City] was entitled to proceed against any collateral securing that debt, including collateral located in Kentucky.

The Court adopts Commissioner Harrison's analysis and finding that a failure to pay the taxes on the Indiana property constituted a default on the note secured by such property, and that the default under the terms of one note thereby constituted a default on all notes payable to that lender, including those note set out herein.

[The Setrees'] contention that they were not provided notice or an opportunity to cure is refuted by the record.  As was confirmed by [River City's] response to the [Setrees'] Exceptions, the Indiana mortgage instrument permits [the Setrees] the opportunity to cure a default for a period of 20 days after they were notified of a defaulting event.  By [the Setrees'] own admission in a letter, dated October 13, 2011, in the record, they were given in excess of one year to cure the defaults; however, they were either unwilling or unable to do so.  Accordingly, the record reflects

5

that [the Setrees] were provided notice and an opportunity to cure the default, yet failed to do so.

(Appellee's App. pp. 51-52). The Setrees are appealing both judgments rendered by the Kentucky courts.

On January 12, 2012, River City initiated the current action, seeking to foreclose on the Cardinal Lane Property due to the Setrees' default on the 2007 Note and requesting that its mortgage lien be foreclosed and the Property sold. On November 8, 2012, the Setrees moved for summary judgment. On February 22, 2013, River City filed its response, as well as its cross-motion for summary judgment and decree of foreclosure.

On October 29, 2013, following a hearing on the parties' motions, the trial court entered summary judgment in favor of River City and denied the Setrees' motion, concluding, in pertinent part, that, based on the principles of full faith and credit, *res judicata* prevented the relitigation of the Setrees' default on the terms of the 2007 Note and mortgage. Nevertheless, the trial court also held that "[r]egardless of the findings of the Kentucky [c]ourts and the exclusionary [e]ffect of the Doctrine of *Res Judicata*, sufficient undisputed evidence exists to grant summary judgment as a matter of law in favor of [River City] in this Indiana court." (Appellant's App. p. 15).

The Setrees now appeal. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

I. *Standard of Review*

Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial

6

Rule 56(C). A fact is material if its resolution would affect the outcome of the case, and an issue is genuine if a trier of fact is required to resolve the parties' differing accounts of the truth . . . , or if the undisputed facts support conflicting reasonable inferences. *Williams v. Tharp*, 914 N.E.2d 756, 761 (Ind. 2009).

In reviewing a trial court's ruling on summary judgment, this court stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. *First Farmers Bank & Trust Co. v. Whorley*, 891 N.E.2d 604, 607 (Ind. Ct. App. 2008), *trans. denied*. Thus, on appeal, we must determine whether there is a genuine issue of material fact and whether the trial court has correctly applied the law. *Id*. at 607-08. In doing so, we consider all of the designated evidence in the light most favorable to the non-moving party. *Id*. at 608. The party appealing the grant of summary judgment has the burden of persuading this court that the trial court's ruling was improper. *Id*. When the defendant is the moving party, the defendant must show that the undisputed facts negate at least one element of the plaintiff's cause of action or that the defendant has a factually unchallenged affirmative defense that bars the plaintiff's claim. *Id*. Accordingly, the grant of summary judgment must be reversed if the record discloses an incorrect application of the law to the facts. *Id*.

We observe that, in the present case, the trial court entered findings of fact and conclusions of law in support of its judgment. Special findings are not required in summary judgment proceedings and are not binding on appeal. *Id*. However, such findings offer this court valuable insight into the trial court's rationale for its decision and facilitate appellate review. *Id*.

## II *Full Faith and Credit*

The Setrees now contend that the trial court erred in concluding that the dispute was barred by *res judicata* arising from the full faith and credit our courts are mandated to award to the Kentucky judgments.

### A. *Full Faith and Credit*

The Full Faith and Credit Clause of the United States Constitution requires that "[f]ull faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state." U.S. Const. Art IV, §1. Full faith and credit provides that "the judgment of a state court should have the same credit, validity, and effect in every other court of the United States, which it had in the state where it was pronounced." *Gardner v. Price*, 838 N.E.2d 546, 550 (Ind. Ct. App. 2005). Indiana has codified this notion at Indiana Code section 34-39-4-3, which establishes that records and judicial proceedings from courts in other states "shall have full faith and credit given to them in any court in Indiana as by law or usage they have in the courts in which they originated." Full faith and credit commands deference to the judgments of foreign courts, and "the judgment of a sister state, regular and complete upon its face is *prima facie* valid." *Gardner,* 838 N.E.2d at 550.

A foreign judgment is, however, open to collateral attack for want of jurisdiction. *Id.* "Before an Indiana court is bound by a foreign judgment, it may inquire into the jurisdictional basis for that judgment; if the first court did not have jurisdiction over the subject matter or relevant parties, full faith and credit need not be given." *Id.* Thus, we

do not give full faith and credit to orders entered by a court without subject matter jurisdiction or personal jurisdiction.

Synopsizing the holding in *Durfee v, Duke*, 375 U.S. 106 (1963), as "[i]f the parties litigate whether land is located in one state or another state, that issue will not be re-litigated in another court," the Setrees distinguish *Durfee* and find it inapplicable to the cause at hand since the issue before us is not the location of the real estate, but rather involves litigation "in regard to unique real estate, unique contracts, and unique conduct." (Appellants' Br. p. 16). In *Durfee*, our Supreme Court held that a state court judgment resolving a property dispute between two private parties could not be attacked collaterally by one of the parties who had fully litigated the matter. *Id.* at 108. The case involved a fully litigated factual finding by a Nebraska court that it had subject matter jurisdiction because the disputed land was in Nebraska; this finding precluded Missouri courts from considering a collateral attack on the Nebraska court's jurisdiction on the factual basis that the disputed river-bottom land was in Missouri. *Id.* In reaching this holding, *Durfee* relied on the well-established principle that

> [a] judgment is entitled to full faith and credit—even as to questions of jurisdiction—when the second court's inquiry discloses that those questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment.

*Id.* at 111. With respect to cases involving real property, the Supreme Court unequivocally stated:

> It is argued that an exception to this rule of jurisdictional finality should be made with respect to cases involving real property because of this Court's emphatic expressions of the doctrine that courts of one State are completely

> without jurisdiction directly to affect title to land in other States. This argument is wide of the mark.

*Id*. at 115. While *Durfee*'s facts are different from those presented here, the general principle recognized by the Supreme Court—"once [a] matter has been fully litigated and judicially determined" in one state, it cannot be "retried in another State in litigation between the same parties"—nonetheless applies. *See id*.

Turning to Indiana case law, the Setrees rely on *In re Estate of Latek*, 960 N.E.2d 193 (Ind. Ct. App. 2012), and *Evansville Ice & Cold-Storage Co. v. Winsor*, 48 N.E. 592 (Ind. 1897), in an attempt to carve out an exception to *Durfee*'s well-established precedent. Specifically, they contend that "[j]udgments in a sister jurisdiction have no influence in a foreclosure action on separate property in Indiana as real property is unique." (Appellants' App. p. 13). Both *Latek* and *Winsor* addressed the preclusive effect of decisions of other states related to the disposition of property under wills. In *Winsor*, the daughter of a testatrix, who owned property in Indiana but whose will had been probated in New York, sought to challenge the will as it related to the Indiana real estate. *Id*. at 593. Our supreme court analyzed whether a three-year statute of limitations for challenges to foreign wills which were filed, recorded, or probated in Indiana applied to the daughter's case. *Id*. Our court noted that while "a probate of the will in the state where the testation was domiciled at the time of his death is [] entitled to full faith and credit," the title "to and the disposition of real property, whether by deed, a last will, or otherwise, must be governed exclusively by the law of the county where it is situated." *Id*.

10

Likewise in *Latek*, the question presented to this court was what effect an order from an Illinois court denying probate of a testator's will had on the disposition of real property in Indiana. *Latek*, 960 N.E.2d at 198. We concluded that the Illinois order had no effect on the subsequent admission and probate of the will in Indiana as it concerned the disposition of real property in Indiana. *Id*. at 200. While *Latek*'s pronouncement that "[p]rinciples of *res judicata* and full faith and credit have no application in matters involving probate and title to realty" is an unfortunate generalization, contextually, it is clear that the *Latek* court intended that "the probate of a will in another state has no effect on title of real estate in Indiana unless the will is duly admitted to probate in this state or filed and recorded as a foreign will in compliance with our laws." *Id.* at 200, 201 (citing *Estate of Hofgesang v. Hansford*, 714 N.E.2d 1213, 1217 (Ind. Ct. App. 1999)). In the case *sub judice*, no will contest is alleged and therefore *Latek* and *Winsor* are inapposite.

Because we conclude that the Kentucky judgments had acquired subject matter jurisdiction and personal jurisdiction over the parties before it, we must afford full faith and credit to these opinions. *See Gardner*, 838 N.E.2d at 550.

### B. *Res Judicata*

Having resolved that we must grant full faith and credit to the Kentucky orders, we must now ascertain the *res judicata* effect of these determinations before this court. The effect Indiana must accord the Kentucky judgments depends on the treatment that judgment would receive in Kentucky. *Id*. at 551.

Pursuant to Kentucky precedents, *res judicata* prevents the relitigation of the same issues in a subsequent appeal. *Miller v. Administrative Office of Courts*, 361 S.W.3d 867,

11

871 (Ky 2011), *reh'g denied*. Three elements must be met for *res judicata*, or claim preclusion, to apply: (1) there must be an identity of the parties between the two actions; (2) there must be an identity of the two causes of action; and (3) the prior action must have been decided on the merits. *Id.* at 872. A close cousin to the doctrine of *res judicata* is the theory of collateral estoppel, or issue preclusion. *Id.* In order for issue preclusion to operate as a bar to further litigation, certain elements must be established: (1) at least one party to be bound in the second case must have been a party in the first case; (2) the issue in the second case must be the same as the issue in the first case; (3) the issue must have been actually litigated; (4) the issue was actually decided in that action; and (5) the decision on the issue in the prior action must have been necessary to the court's judgment and adverse to the party to be bound. *Id*. *Res judicata*, being the older term, is thought of as an umbrella doctrine that contains within it both claim and issue preclusion. *Id*. at 871. A pending appeal does not affect the finality of a judgment for preclusion purposes. *See Stemler v. City of Florence*, 126 F.3d 856, 871 (6th Cir. 1997); *Roberts v. Wilcox*, 805 S.W.2d 153, 153 (Ky. Ct. App. 1991).

Here, *res judicata* is more properly defined as issue preclusion. The same issues—the Setrees' failure to pay Indiana property tax pursuant to their 2007 Note and their right to cure—between the same parties—the Setrees and River City—governed the Kentucky cases and this appeal. River City's right to foreclose on all three notes was triggered as a result of the Setrees' failure to pay their Indiana taxes on the Cardinal Lane Property. Because of cross-default provisions in the three notes executed between the Setrees and River City, the Setrees' default under the 2007 Note constituted a default

12

under the previously executed two notes as well. Therefore, the Kentucky courts' decisions to grant River City the right to foreclose on the Setrees' Kentucky properties necessarily included a determination of default under the 2007 Note—the issue before the trial court. Moreover, the order issued by the Jefferson Circuit Court on January 15, 2013, analyzed the Setrees' right to cure under the note, an identical claim made by the Setrees in the current case, as being without merit. Accordingly, although the Kentucky cases concerned different mortgages and different property than the instant cause, they litigated the same issues between the same parties: the Setrees' failure to pay the Indiana taxes on the Cardinal Lane Property and the Setrees' right to cure its failure under the 2007 Note. Therefore, granting the Kentucky judgments full faith and credit, we are precluded from addressing the Setrees' claim.

CONCLUSION

Based on the foregoing, we conclude that principles of full faith and credit required the trial court to consider the judgments of a Kentucky court *res judicata* to the instant cause.

Affirmed.

ROBB, J. and BRADFORD, J. concur

13