**Connie Pierce GARDNER,
Appellant–Plaintiff,**

v.

**Ernie Lee PIERCE, Appellee–
Defendant.**

**No. 10A01–0504–CV–145.**

Court of Appeals of Indiana.

Dec. 8, 2005.

548

Leslie D. Merkley, Merkley Law Office, Jeffersonville, for Appellant.

Jonathan A. Leachman, Fifer Law Office, New Albany, for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Connie Pierce Gardner appeals the trial court's dismissal of her Complaint to Vacate Judgment Procured by Fraud in favor of her ex-husband, Ernie Pierce. Finding that the issue presented by Gardner was conclusively litigated in an action properly before the Texas state court system with both sides fully participating, we affirm the trial court.

### Facts and Procedural History

Gardner and Pierce were divorced in 1979 in the Circuit Court for Wabash County, Illinois. Under an order of that court (the "Illinois Order"), Gardner was awarded physical and legal custody of the

parties' three minor children subject to Pierce's visitation rights. Additionally, Pierce was ordered to pay child support to Gardner.

In January 1981, Pierce filed a Joint Petition to Modify Custody in the Clark Superior Court in Indiana (the "Indiana Court"). Though Gardner argues that the document was fraudulent, signatures reading "Connie Kay Pierce" are ascribed to both the joint petition and to a summons served in Hollywood, Florida, where Gardner was living at the time.[1] The joint petition represented to the Indiana Court that there had been a substantial and continuing change of circumstances, namely that Pierce had actual custody and control of the parties' children the majority of the time since the entry of the Illinois Order. According to the petition, the parties agreed that it was in the best interests of the children for Pierce to have custody subject to visitation for Gardner. The petition further reports that Gardner agreed to waive any claim for child support under the terms of the Illinois Order. The Indiana Court approved the Joint Petition to Modify Custody and entered an Order (the "Indiana Order") awarding custody to Pierce and terminating his child support obligation. Subsequent to this action, the parties each claim to have had physical custody of the children and each alleges that the other party's contact with the children was sporadic at best.

In 2002, Gardner filed a Petition to Enforce Foreign Judgment (the "Petition to Enforce") under the Texas version of the Uniform Interstate Family Support Act ("UIFSA")[2] in the District Court for Har-

---

1. The Joint Petition to Modify Custody was signed and sworn to before a notary public by Pierce and by a woman who either was, or who claimed to be, Gardner. In arguing that Pierce committed fraud in his execution of the joint petition, Gardner suggests that

Pierce's sister, who is also named Connie, may have been Pierce's accomplice.

2. Both Texas and Indiana have UIFSA statutes that are substantially similar to and in compliance with the federal UIFSA. *See* Tex.

ris County, Texas (the "Texas Court"), where Pierce was residing. Gardner attached a copy of the Illinois Order to this petition, but she did not attach a copy of the Indiana Order, claiming later that she was unaware of its existence at that time. Pierce's answer to the petition included a general denial and Pierce's assertion of the affirmative defenses of statute of limitation, laches, and res judicata. In March 2003, Pierce filed a Counterpetition to Enforce Foreign Judgment and for Declaratory Judgment (the "Counterpetition to Enforce"), including the Indiana Order as an attachment. Pierce restated his general denial and affirmative defenses and additionally requested a declaratory order that no back child support was owed based upon the Indiana Order.

Gardner responded that she never consented to or signed the Indiana Order and that, until the Texas proceedings, she was without knowledge of its existence. She filed an amended petition with the Texas Court alleging that Pierce had committed fraud and was involved in a conspiracy with third parties in procuring the Indiana Order. In April 2003, the Texas Court conducted a hearing at which both Pierce and Gardner were present in person and by counsel. The Texas Court held that the Indiana Order was valid and that Pierce owed no outstanding child support to Gardner. Gardner did not appeal this Order.

Returning to the Indiana court system, in April 2004 Gardner filed her Complaint to Vacate Judgment Procured by Fraud in the Clark Superior Court. In response, Pierce filed a Trial Rule 12(B)(6) Motion to Dismiss and Motion for Attorney Fees, asserting the affirmative defenses of statute of limitation, laches, res judicata, and collateral estoppel. The Indiana Court concluded that Texas "had jurisdiction

over the parties and the subject matter of the action filed therein" and that "[a]ll issues raised in Connie Pierce Gardner's Complaint to Vacate Judgment Procured by Fraud were conclusively litigated with both sides fully participating in the action . . . in the District Court of Harris County, Texas." Appellant's App. p. 44–45 (formatting omitted). Therefore, the Indiana Court held that the judgment of the Texas Court was entitled to full faith and credit in the State of Indiana and that Gardner's complaint was barred under the doctrine of res judicata. This appeal now ensues.

**Discussion and Decision**

Gardner raises one issue on appeal, which we restate as whether the trial court properly concluded that res judicata barred her complaint because the judgment of the Texas Court was entitled to Full Faith and Credit in the State of Indiana. At the outset, we note that the trial court here entered Findings of Fact and Conclusions of Law. When a trial court enters such findings, we must determine whether the evidence supports the findings and whether the findings support the judgment. *Lake County Trust Co. v. Jones,* 821 N.E.2d 1, 3 (Ind.Ct.App.2004), *reh'g. denied.* The court's findings and conclusions will be set aside only if they are clearly erroneous, that is, if the record contains no facts or inferences supporting them. *Id.* A judgment is clearly erroneous when a review of the record leaves us with the firm conviction that a mistake has been made. *Id.* We neither reweigh the evidence nor assess the credibility of witnesses but consider only the evidence most favorable to the judgment. *Id.* at 3–4.

When determining whether a judgment issued by a court of a sister state is binding upon Indiana courts under the

Family Code Ann. § 159; Ind.Code art. 31–18    et al.

doctrine of res judicata, our inquiry is twofold. *See N. Ind. Commuter Transp. Dist. v. Chicago SouthShore and South Bend R.R.*, 685 N.E.2d 680, 685 (Ind.1997). First, we ask whether Indiana courts are required to give full faith and credit to the foreign judgment. *See id.* If so, then we ask whether that judgment bars future litigation of the matter in that foreign jurisdiction. *See id.* We address each of these issues herein.

## I. Full Faith and Credit

■ The Full Faith and Credit Clause of the United States Constitution mandates that "[f]ull faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state." U.S. Const. art. IV, § 1. Full faith and credit means that "the judgment of a state court should have the same credit, validity, and effect, in every other court of the United States, which it had in the state where it was pronounced." *N. Ind. Commuter Transp. Dist.*, 685 N.E.2d at 685 (quoting *Underwriters Nat'l Assurance Co. v. N. Carolina Life and Accident and Health Ins. Guar. Ass'n*, 455 U.S. 691, 704, 102 S.Ct. 1357, 71 L.Ed.2d 558 (1982)). Indiana has codified this notion at Indiana Code § 34–39–4–3, which provides that records and judicial proceedings from courts in other states "shall have full faith and credit given to them in any court in Indiana as by law or usage they have in the courts in which they originated." Full faith and credit commands deference to the judgments of foreign courts, and " 'the judgment of a sister state, regular and complete upon its face, is prima facie valid.' " *Tom–Wat, Inc. v. Fink*, 741 N.E.2d 343, 348 (Ind.2001) (quoting *Varoz v. Estate of Shepard*, 585 N.E.2d 31, 33 (Ind.Ct. App.1992)).

■ A foreign judgment is, however, open to collateral attack for want of juris-

diction. *Commercial Coin Laundry Sys. v. Enneking*, 766 N.E.2d 433, 439 (Ind.Ct. App.2002). "Before an Indiana court is bound by a foreign judgment, it may inquire into the jurisdictional basis for that judgment; if the first court did not have jurisdiction over the subject matter or relevant parties, full faith and credit need not be given." *Id.* Thus, we do not give full faith and credit to orders entered by a court without subject matter or personal jurisdiction. When reviewing subject matter jurisdiction, the "scope of review is a 'limited' one that does not entail de novo review of the jurisdictional issue by the second court." *N. Ind. Commuter Transp. Dist.*, 685 N.E.2d at 685. We apply the law of the state where the judgment was rendered to determine whether that state had both personal and subject matter jurisdiction. *See Enneking*, 766 N.E.2d at 439.

Gardner contends that the Texas court was without subject matter jurisdiction to determine the validity of the Indiana Order in this case; she does not contest the Texas Court's assertion of personal jurisdiction. Gardner concedes that the cause of action she filed in the Texas Court granted Texas jurisdiction under UIFSA. However, she proceeds to argue that the Texas Court only had jurisdiction sufficient to enforce or modify an uncontested support order against Pierce; it did not, according to Gardner, acquire jurisdiction to deny her request for relief premised upon a determination regarding the validity of an allegedly fraudulent order emanating from an Indiana state court. In other words, Gardner argues that any such determination lies only with the Indiana court that granted the order, and therefore the Texas Court could not vacate the Indiana Order because it lacked the subject matter jurisdiction to do so.

We cannot accept Gardner's line of reasoning on this matter. As both parties concede, the Texas Court properly assumed jurisdiction of Gardner's original complaint—requesting enforcement of the Illinois Order—under UIFSA. Pierce appropriately responded to the complaint by asserting the Indiana Order as an affirmative defense; Texas, of course, possessed the power to address any defense raised against an action properly filed in a Texas court. Upon learning of Pierce's defense, Gardner was in a position to choose whether to continue with the action in the Texas Court or to seek a stay or withdrawal of the action in Texas in order to address the validity of the Indiana Order in the Indiana Court. By asserting, as a counter-defense, that the Indiana Order was procured by fraud, Gardner submitted to the jurisdictional authority of the Texas Court and chose to continue litigating the matter in that forum. *See Smith v. Young,* 620 S.W.2d 656, 659 (Tex.Civ.App. 1981) ("The judgment of a sister state may be attacked collaterally for fraud when the defense of fraudulent procurement would be available in the state in which the judgment was rendered."); *see also* Ind. Trial Rule 60(B)(3) (permitting relief from judgment based on fraudulent acts of opposing party); *In re Paternity of Tompkins,* 518 N.E.2d 500 (Ind.Ct.App.1988) (recognizing fraud in the procurement as a defense available under Indiana state law). Contrary to Gardner's assertion, it is axiomatic that when she asked the Texas Court to disregard the Indiana Order by finding that it was fraudulently obtained, she requested a determination *either vacating or following* the Indiana Order.

Furthermore, even if it were error for the Texas Court to hear the case—and we hold that it was not—we defer to a foreign court's determination of jurisdiction even where that court's conclusion was erroneous as a matter of law. *N. Ind. Commuter Transp. Dist.,* 685 N.E.2d at 686; *Gamas–Castellanos v. Gamas,* 803 N.E.2d 665, 666 (Ind.2004) (recognizing this principle in the context of child custody litigation); *Bergman v. Zempel,* 807 N.E.2d 146, 155 (Ind.Ct.App.2004). Applying this standard in the case at bar, we cannot say that the Texas Court's determination to hear Gardner's complaint regarding fraud in the procurement is not binding upon the parties to that litigation. We must therefore afford full faith and credit to the Texas judgment.

## II. Res Judicata

Having resolved that we must grant full faith and credit to the Texas Court's order, we must now ascertain the res judicata effect of that determination on Gardner's complaint before this Court. The effect Indiana must accord the Texas judgment depends on the treatment that judgment would receive in Texas.[3] *See Underwriters Nat'l Assurance Co.,* 455 U.S. at 704, 102 S.Ct. 1357; *N. Ind. Commuter Transp. Dist.,* 685 N.E.2d at 688. A recent Texas appellate decision reviewed that State's application of res judicata as follows:

> The successful application of res judicata requires proof that (1) a prior judgment on the merits was issued by a court of competent jurisdiction; (2) the parties in the first suit are the same as those in the second suit or are in privity with them; and (3) the second suit is based

**3.** We note that Gardner's brief mistakenly cites as controlling precedent the four-prong Indiana analysis for res judicata as set forth in *Thacker v. Bartlett,* 785 N.E.2d 621, 624 (Ind.Ct.App.2003). Despite semantic differences between the two tests, however, we find them to be substantially similar and think it unlikely that a proper analysis applying Indiana law would produce a different result than the analysis we employ.

on the same claims as those that were raised or that could have been raised in the first suit.

*United States Fire Ins. Co. v. Fugate,* 171 S.W.3d 508, 510 (Tex.Ct.App.2005) (citing *Amstadt v. United States Brass Corp.,* 919 S.W.2d 644, 652 (Tex.1996), *reh'g overruled), reh'g overruled, petition for rev. filed.* Gardner acknowledges that the fraud claim was argued on the merits before the Texas Court, that the parties to both actions are identical, and that the Texas and Indiana claims both encompass the same defense that was fully litigated in the Texas Court, i.e., that the Indiana Order was procured by fraud. She argues, however, that the Texas Court was not one of competent jurisdiction with regard to the fraud claim, thus precluding any res judicata effect stemming from the Texas judgment on that issue.

Texas courts recognize four aspects of jurisdiction necessary for the proper adjudication of a case: 1) personal jurisdiction; 2) subject matter jurisdiction; 3) jurisdiction to enter a particular type of judgment; and 4) capacity to act as a court. *Boyes v. Morris Polich & Purdy, LLP,* 169 S.W.3d 448, 459 (Tex.Ct.App.2005) (citing *Browning v. Placke,* 698 S.W.2d 362, 363 (Tex. 1985)). Gardner does not contest the Texas Court's assertion of personal jurisdiction or its capacity to act as a court. Additionally, to the extent that Gardner again argues that the Texas Court lacked subject matter jurisdiction over her claim, our analysis of the issue under the full faith and credit clause is equally applicable here

and need not be repeated. However, Gardner further alleges, apparently, that the Texas Court lacked the jurisdiction to enter a particular type of judgment in this case, specifically the jurisdiction to *vacate* the Indiana Order, and so the judgment entered is void. We cannot agree.

In response to Pierce's introduction of the Indiana Order as a defense to Gardner's UIFSA action, Gardner counter-defended that the Order was procured by fraud. We agree with Gardner that it is generally inappropriate for Texas to vacate an Indiana order, and absent an exception to this general rule, Texas is required to accord full faith and credit to Indiana judgments. However, Gardner's case presents one such widely-recognized exception, available under both Texas and Indiana law: fraud in the procurement.[4] *Mindis Metals, Inc. v. Oilfield Motor & Control, Inc.,* 132 S.W.3d 477, 484–85 (Tex. Ct.App.2004) ("The following exceptions to full faith and credit are well-established: ... (4) when the judgment was procured by extrinsic fraud ....") (citing *Strick Lease, Inc. v. Cutler,* 759 S.W.2d 776, 777 (Tex.Ct.App.1988)) (emphasis omitted), *reh'g overruled; see also Kniffen v. Courtney,* 148 Ind.App. 358, 266 N.E.2d 72, 75 (Ind.Ct.App.1971) (reviewing a Kentucky divorce decree awarding child support and stating that such an order, i.e., one of a sister state, " 'cannot be changed or modified by the court of a sister state, *in the absence of fraud* ....' ") (quoting *White v. White,* 214 Ind. 405, 15 N.E.2d 86, 88

**4.** Gardner mistakenly views this issue in terms of UIFSA, stating, "UIFSA does not confer any authority to vacate an out of state child support order." Appellant's Br. p. 8. Properly framed, however, this issue is independent of UIFSA; we are simply asking whether the Texas Court had the authority to adjudicate a claim of fraud in the procurement. Just as UIFSA establishes a statutory basis upon which a state may make certain

determinations with regard to claims that ordinarily would be barred under full faith and credit principles, the common law exception permitting courts to hear cases involving fraud in the procurement grants a court the power to determine the validity of another state's judgment where an underlying order has now come properly before the reviewing state's courts.

(Ind.1938)) (emphasis added).[5] Because Gardner's counter-defense falls squarely within this exception, the Texas Court correctly determined that it had the authority to adjudicate the validity of the Indiana Order.

Gardner appropriately defended her cause of action on these grounds and fully litigated the issue on the merits in the Texas Court. To the extent that she was not satisfied with the Texas Court's decision regarding fraud in the procurement, she was required to appeal the decision within the Texas court system. She chose not to do so. This allowed the matter to come to a close.[6] Gardner cannot now seek relief from a lawful and final adverse judgment by bringing the same action for a second time in our courts. The Indiana Court correctly found that her claim is barred by the doctrine of res judicata.

Affirmed.

SULLIVAN, J., and FRIEDLANDER, J., concur.

5. We note that *Kniffen* did not apply the Uniform Reciprocal Enforcement of Support Act ("URESA"), the predecessor to UIFSA, which was in effect in 1971. This is of no consequence here, however, as we cite *Kniffen* only to demonstrate that Indiana has also long recognized a fraud exception to full faith and credit.

6. We are aware that where necessary to prevent manifest injustice, the Texas legal system provides for a cause of action to be reopened, under what is known as a bill of review, even after the time has passed for an appeal to be filed in their courts. *See Garza v. Attorney General*, 166 S.W.3d 799, 807 (Tex.Ct.App. 2005). However, this Texas doctrine recognizes that "[t]he grounds upon which a bill of review can be obtained are narrow because the procedure conflicts with the fundamental policy that judgments must become final at some point." *Id.* In order to secure a bill of review, a litigant "must generally allege and prove (1) a meritorious defense to the cause of action alleged to support the judgment; (2) which he was prevented from making by the fraud, accident, or wrongful act of the opposing party; and (3) unmixed with any fault or negligence of his own." *Id.* at 808. In order to be found free of any fault, a litigant must be able to demonstrate that he "exercised due diligence in availing himself of all legal remedies against the former judgment." *Id.* at 818. Having not even filed an appeal in the Texas cause of action, we do not see how Gardner could meet this high burden.