

FILED

Feb 28 2018, 7:49 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mickey J. Lee
Maurice Wutscher, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| EBF Partners, LLC, <br> *Appellant-Plaintiff,* <br><br> v. <br><br> Novabella, Inc. d/b/a <br> and Frank Terranova, <br><br> *Appellee-Defendant.* | February 28, 2018 <br><br> Court of Appeals Case No. <br> 49A02-1705-CC-961 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Thomas J. Carroll, Judge <br><br> Trial Court Cause No. <br> 49D06-1611-CC-39165 |

**Pyle, Judge.**

## Statement of the Case

[1]   EBF Partners, LLC ("EBF") appeals the trial court's order dismissing with prejudice its petition to domesticate a foreign judgment from New York, which was entered pursuant to a confession of judgment in a cognovit note, against Novabella Inc. ("Novabella") and Frank Terranova ("Terranova").  EBF argues

that the trial court erred by dismissing its petition and by failing to give full faith and credit to the New York judgment.

[2] Although cognovit notes are prohibited in Indiana, the Full Faith and Credit Clause of our Federal Constitution requires reversal of the trial court's judgment. Because the New York judgment appears on its face to be rendered by a court of competent jurisdiction and Novabella did not challenge the jurisdiction of the New York court to enter the judgment, the trial court was required to afford full faith and credit to the New York judgment.

[3] We reverse.

# Issue

Whether the trial court erred by dismissing EBF's petition to domesticate the judgment of a sister state.

# Facts

[4] EBF is a Delaware limited liability company with its place of business in New York. Novabella is an Indiana corporation with its place of business in Indiana. Terranova, the owner of Novabella, is a resident of Indiana.

[5] On June 28, 2016, Novabella entered into a Payment Rights Purchase and Sale Agreement ("Purchase Agreement") wherein Novabella sold $204,000 of its future receivables to EBF for a purchase price of $150,000.[1] Thus, Novabella

---

[1] Terranova signed the Purchase Agreement on behalf of Novabella.

received $150,000 up front from EBF and agreed to repay EBF $204,000 from Novabella's business receipts. Under the Purchase Agreement, Novabella was required to deposit its sales proceeds into a designated account from which EBF would withdraw a daily payment of either $1,457.14 or fifteen percent (15%) of the daily deposit until EBF had received its full purchased amount. Terranova also signed a Security Agreement and Guaranty ("Guaranty") to guarantee Novabella's performance under the Purchase Agreement.

[6] The Purchase Agreement contained the following relevant provisions regarding EBF's available remedies in the event of a default:

> **3.2 Remedies.** If any Event of Default occurs, EBF may proceed to protect and enforce its rights including, but not limited to, the following:
>
> * * * * *
>
> **B.** EBF may enforce the provisions of the Personal Guaranty of Performance against the Guarantor(s).
>
> **C.** If permitted under the laws of the state in which the Seller [Novabella] resides; Seller hereby authorizes EBF to execute in the name of the Seller a Confession of Judgment in favor of EBF in the full uncollected Purchase Amount and enter that Confession of Judgment with the Clerk of any Court and execute thereon.
>
> * * * * *
>
> **E.** EBF may protect and enforce its rights and remedies by lawsuit. In any such lawsuit, under which EBF shall recover Judgment against Seller, Seller shall be liable for all of EBF's costs of the lawsuit, including but not limited to all reasonable attorneys' fees and court costs.

* * * * *

> All rights, powers and remedies of EBF in connection with this Agreement may be exercised at any time by EBF after the occurrence of an Event of Default, are cumulative and not exclusive, and shall be in addition to any other rights, powers or remedies provided by law or equity.

(App. Vol. 2 at 21).  The Purchase Agreement also contained a clause indicating that it would be governed by and construed under the laws of New York.

[7] A few days later, on July 6, 2016, Terranova, individually and on behalf of Novabella, signed an Affidavit of Confession of Judgment ("Confession of Judgment"),[2] in which he again consented to the jurisdiction of any court in New York.  The Confession of Judgment also contained the following relevant provisions:

> 5.  Business Defendant [Novabella] and I [Terranova] each confess judgment, jointly, severally, and individually, and authorize the entry of judgment in favor of Plaintiff [EBF] and against the Defendants [Novabella and Terranova] in the sum of $204[,]000, less any payments made in accordance with the Payment Rights Purchase and Sale Agreement dated 06/28/2016, plus [EBF's] attorneys' fees calculated at twenty-five percent (25%) of the aforesaid sum, plus pre-judgment and post-judgment interest at New York's statutory rate of 9% from 06/28/2016 through the entry of judgment herein, and the costs of filing this affidavit and entering judgment as agreed to in the Payment Rights Purchase and Sale Agreement.  Such amount

---

[2] Terranova's confession of judgment was notarized by a notary public in Indiana.

shall be set forth in an affidavit or affirmation executed by [EBF] or [EBF's] attorney(s) and attached hereto at the time of entry of this Confession of Judgment.

6. This Confession of Judgment is for money justly due and owing to [EBF] arising from i) [Novabella and Terranova's] failure to pay [EBF] accounts receivables and sales proceeds that were purchased by [EBF] from [Novabella] pursuant to the Payment Rights Purchase and Sale Agreement dated 06/28/2016, ii) [Novabella and Terranova's] breach of the Payment Rights Purchase and Sale Agreement, and iii) [Novabella and Terranova's] breach of the personal guaranty of the Payment Rights Purchase and Sale Agreement, plus pre-judgment and post-judgment interest at New York's statutory rate of 9% from 06/28/2016 through the entry of judgment herein, [EBF's] attorneys' fees in the amount twenty-five percent (25%) of the aforesaid sum, and the costs of filing this affidavit and entering judgment as agreed to in the Payment Rights Purchase and Sale Agreement. The supporting documents include the Payment Rights Purchase and Sale Agreement with personal guaranty, and UCC-1 financing statement(s).

(App. Vol. 2 at 12).

[8] Thereafter, on August 8, 2016, EBF filed, in a New York trial court, the Confession of Judgment. EBF also filed an affidavit from an EBF collections manager, who averred that Novabella and Terranova had breached the Purchase Agreement on July 21, 2016 by "placing a stop payment on all debits of the specified percentage from the designated deposit account" and interfered with EBF's ability to collect its daily payment. (App. Vol. 2 at 15). EBF obtained a "confessed" judgment in the amount of $237,570.27 against

Novabella and Terranova ("New York confessed judgment").[3] (App. Vol. 2 at 35). This New York confessed judgment was obtained without notice to Novabella and Terranova and without a hearing.

[9] Subsequently, on November 1, 2016, EBF filed, in Marion County Superior Court, a Notice and Petition to Domesticate Foreign Judgment ("foreign judgment enforcement petition"), seeking to have Indiana recognize and enforce the New York confessed judgment that remained unsatisfied. In December 2016, Novabella and Terranova (collectively, "Novabella") filed an answer and affirmative defenses. Among its defenses, Novabella contended that EBF's foreign judgment enforcement petition was barred because it was "illegal[]" and "contrary to [the] public policy in the state of Indiana." (App. Vol. 2 at 62). Additionally, it requested that the trial court dismiss EBF's foreign judgment enforcement petition with prejudice.

[10] Thereafter, in March 2017, EBF filed a motion to strike Novabella's answer. In its motion, EBF argued that the answer was not relevant and that Novabella was barred from raising any defenses to the New York confessed judgment because that case had already been "decided on the merits[.]" (App. Vol. 2 at 64). On March 9, 2017, the trial court entered an order ("the Motion to Strike Order"), in which it granted EBF's motion to strike Novabella's answer.

---

[3] The $237,570.27 judgment included the $188,352.88 balance owed under the Purchase Agreement plus interest, attorney fees, costs, and fees.

On March 16, 2017, Novabella filed a motion to set aside, in which it requested the trial court to: (1) set aside the Motion to Strike Order; and (2) dismiss EBF's foreign judgment enforcement petition.[4] Novabella argued that EBF's New York confessed judgment had been entered without service of process and was "improper in the state of Indiana" and "in direct violation of Indiana Code [§] 34-54-3-4." (App. Vol. 2 at 68). Novabella also argued that the Confession of Judgment, which EBF included in a cognovit note and had Terranova sign prior to the occurrence of any default or the accrual of any cause of action, was contrary to Indiana statutes.

On April 5, 2017, the trial court held a hearing on Novabella's motion.[5] That same day, the trial court entered an order in which it: (1) granted Novabella's motion to set aside the Motion to Strike Order; and (2) dismissed the case with prejudice. EBF now appeals.

# Decision

EBF argues that the trial court erred by dismissing with prejudice its foreign judgment enforcement petition and by failing to give full faith and credit to the New York confessed judgment.

---

[4] In it motion to set aside the Motion to Strike Order, Novabella mentioned Indiana Trial Rule 60(B) but did not reference any specific subsection of that rule.

[5] When EBF filed its notice of appeal, it did not request that the transcript from this hearing be transcribed; therefore, the record on appeal does not include a copy of the transcript from this hearing.

[14] Initially, we note that Novabella and Terranova have not filed an Appellee Brief. When an Appellee fails to submit an appellate brief, "'we need not undertake the burden of developing an argument on the [A]ppellee's behalf.'" *Front Row Motors, LLC v. Jones*, 5 N.E.3d 753, 758 (Ind. 2014) (quoting *Trinity Homes, LLC v. Fang*, 848 N.E.2d 1065, 1068 (Ind. 2006)). Rather, "'we will reverse the trial court's judgment if the appellant's brief presents a case of prima facie error.'" *Id.* (quoting *Trinity Homes*, 848 N.E.2d at 1068). "Prima facie error in this context is defined as, at first sight, on first appearance, or on the face of it." *Id.* (internal quotation marks and citation omitted).

[15] This appeal stems from EBF's attempt to domesticate a foreign judgment that was based upon a confession of judgment contained in a cognovit note. A "cognovit is the ancient legal device by which the debtor consents in advance to the holder's obtaining a judgment without notice or hearing, and possibly even with the appearance, on the debtor's behalf, of an attorney designated by the holder." *D. H. Overmyer Co. Inc., of Ohio v. Frick Co.*, 405 U.S. 174, 176 (1972). INDIANA CODE § 34-6-2-22 defines a cognovit note as follows:

> "Cognovit note", for purposes of IC [§] 34-54-4, means a negotiable instrument or other written contract to pay money that contains a provision or stipulation:
>
> > (1) giving to any person a power of attorney, or authority as attorney, for the maker, endorser, assignor, or other person liable on the negotiable instrument or contract, and in the name of the maker, endorser, assignor, or other obligor:

(A) to appear in any court, whether of record or inferior; or

(B) to waive personal service of process;

in any action to enforce payment of money or any part of the money claimed to be due;

(2) authorizing or purporting to authorize an attorney, agent, or other representative, however designated, to confess judgment on the instrument for a sum of money when the sum is to be ascertained, or the judgment is to be rendered or entered otherwise than by action of court upon a hearing after personal service upon the debtor, whether with or without attorney's fee; or

(3) authorizing or purporting to authorize an attorney, agent, or representative to:

(A) release errors or the right of appeal from any judgment; or

(B) consent to the issuance of execution on the judgment.

[16]     "Cognovit notes are prohibited in Indiana." *Jaehnen v. Booker*, 806 N.E.2d 31, 34 (Ind. Ct. App. 2004), *trans. denied*. *See also* I.C. § 34-54-3-2 (prohibiting the execution of an agreement or stipulation that is "in connection with the execution of any negotiable instrument or other written contract to pay money" and is executed "before a cause of action on the instrument or contract has accrued"); I.C. § 34-54-3-3 (providing that a contract, stipulation, or power of attorney "given or entered before a cause of action accrues on a promise to pay

is void").[6] Indeed, it is a misdemeanor to "procure another" to execute a cognovit note or to attempt to enforce within Indiana a foreign judgment based upon a cognovit note. *See* IND. CODE § 34-54-4-1 (explaining that a person who knowingly commits such actions commits a Class B misdemeanor). Additionally, INDIANA CODE § 34-54-3-4 provides that certain foreign judgments are unenforceable, including a judgment from another state that is based upon an agreement or stipulation that is prohibited by Indiana statutes.

[17]  However, "in spite of Indiana's aversion to cognovit provisions, a valid foreign judgment based on a cognovit note will be given full faith and credit in Indiana." *Cox v. First Nat. Bank of Woodlawn*, 426 N.E.2d 426, 430 (Ind. Ct. App. 1981). Indeed, "[t]he general rule in Indiana, based upon the authority of the Federal Constitution[7] and 28 U.S.C.A. § 1738,[8] is that judgments of a sister state court will be given full faith and credit by Indiana courts." *Id.* at 429-30.[9]

---

[6] Indiana does allow for a confession of judgment by personal appearance, *see* I.C. § 34-54-2-1, or by power of attorney if, "at the time the party confessing executes the power of attorney . . . , make[s] [an] affidavit stating that: (1) the debt is just and owing; and (2) the confession is not made for the purpose of defrauding the person's creditors." I.C. § 34-54-2-3 (format altered).

[7] Article IV, Section 1 of the United States Constitution provides, in relevant part, that "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State."

[8] 28 U.S.C.A. § 1738 provides, in relevant part, as follows:

> Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

[9] Indiana has codified the concept of full faith and credit at INDIANA CODE § 34-39-4-3, which provides that records and judicial proceedings from courts in other states "shall have full faith and credit given to them in any court in Indiana as by law or usage they have in the courts in which they originated." I.C. § 34-39-4-3(b).

The United States Supreme Court has explained the importance of the application of full faith and credit as follows:

> The concept of full faith and credit is central to our system of jurisprudence. Ours is a union of States, each having its own judicial system capable of adjudicating the rights and responsibilities of the parties brought before it. Given this structure, there is always a risk that two or more States will exercise their power over the same case or controversy, with the uncertainty, confusion, and delay that necessarily accompany relitigation of the same issue.

*Underwriters Nat'l Assurance Co. v. N. Carolina Life and Accident and Health Ins. Guar. Ass'n,* 455 U.S. 691, 703-04 (1982)). Full faith and credit means that "'the judgment of a state court should have the same credit, validity, and effect, in every other court of the United States, which it had in the state where it was pronounced.'" *N. Ind. Commuter Transp. Dist. v. Chicago SouthShore & S. Bend R.R.,* 685 N.E.2d 680, 685 (Ind. 1997) (quoting *Underwriters Nat'l Assurance Co.,* 455 U.S. at 704).

When interpreting the Full Faith and Credit Clause's application to judgments of sister states, the Supreme Court has explained as follows:

> With respect to judgments, "the full faith and credit obligation is exacting." *Baker v. General Motors Corp.,* 522 U.S. 222, 233, 118 S.Ct. 657, 139 L.Ed.2d 580 (1998). "A final judgment in one State, if rendered by a court with adjudicatory authority over the subject matter and persons governed by the judgment, qualifies for recognition throughout the land." *Ibid.* A State may not disregard the judgment of a sister State because it disagrees with the reasoning underlying the judgment or deems it to be wrong

on the merits.  On the contrary, "the full faith and credit clause of the Constitution precludes any inquiry into the merits of the cause of action, the logic or consistency of the decision, or the validity of the legal principles on which the judgment is based." *Milliken v. Meyer,* 311 U.S. 457, 462, 61 S.Ct. 339, 85 L.Ed. 278 (1940).

*V.L. v. E.L.*, -- U.S. --, 136 S. Ct. 1017, 1020 (2016).  "The judgment of a sister state, regular and complete upon its face, is prima facie valid."  *Tom-Wat, Inc. v. Fink*, 741 N.E.2d 343, 348 (Ind. 2001) (internal quotation marks and citation omitted).

[20]  The application of full faith and credit, however, is not without limitations. Indiana is not required to give full faith and credit to a foreign judgment entered by a court that lacked subject matter jurisdiction or personal jurisdiction.  *See Gardner v. Pierce*, 838 N.E.2d 546, 550 (Ind. Ct. App. 2005); *see also V.L.*, 136 S. Ct. at 1020.  Indeed, "before a court is bound by the judgment rendered in another State, it may inquire into the jurisdictional basis of the foreign court's decree." *Underwriters Nat. Assur. Co.*, 455 U.S. at 705.  *See also Hays v. Hays*, 49 N.E.3d 1030, 1037 (Ind. Ct. App. 2016) (explaining that "[a]n Indiana court may inquire into the jurisdictional basis for a foreign judgment").  However, the scope of any such jurisdictional review is "a 'limited' one" and "does not entail de novo review of the jurisdictional issue by the second court." *N. Ind. Commuter Transp. Dist.*, 685 N.E.2d at 685.  "[I]f the judgment on its face appears to be a record of a court of general jurisdiction, such jurisdiction over the cause and the parties is to be presumed unless disproved by extrinsic evidence, or by the record itself." *V.L.*, 136 S. Ct. at 1020 (citations and

internal quotation marks omitted). *See also Commercial Coin Laundry Sys. v. Enneking*, 766 N.E.2d 433, 439 (Ind. Ct. App. 2002) (explaining that a "party attacking the judgment of a sister state has the burden of rebutting the presumption of validity and of showing that the sister state lacked jurisdiction").

[21] Here, after EBF obtained a confessed judgment in New York, it filed the foreign judgment enforcement petition at issue in this case to have Indiana recognize and enforce the New York confessed judgment. The trial court ultimately granted Novabella's request to dismiss EBF's foreign judgment enforcement petition.[10] Effectively, the only way that the trial court in this case could have properly refused to afford full faith and credit to the New York confessed judgment was if the New York court lacked subject matter jurisdiction or personal jurisdiction. Below, Novabella made no such challenge to either form of jurisdiction. Nor did Novabella challenge the propriety of EBF's foreign judgment enforcement petition. Instead, Novabella acknowledged that New York "allows for" confessed judgments and argued that the trial court should not domesticate and recognize the New York confessed judgment because the judgment was "improper in the state of Indiana" and the Confession of Judgment was contrary to Indiana statutes. (App. Vol. 2 at 68). The trial court,

---

[10] Novabella's dismissal request was contained within its motion to set aside the Motion to Strike Order.

apparently agreeing with Novabella's argument, granted Novabella's request to dismiss EBF's foreign judgment enforcement petition.

[22] The United States Supreme Court, however, has clarified that a trial court cannot use its own public policy as a reason to refuse to recognize the judgment of a sister state.

> A court may be guided by the forum State's "public policy" in determining the *law* applicable to a controversy[,] . . . [b]ut our decisions support no roving "public policy exception" to the full faith and credit due *judgments*. The full faith and credit clause is one of the provisions incorporated into the Constitution by its framers for the purpose of transforming an aggregation of independent, sovereign States into a nation. We are aware of [no] considerations of local policy or law which could rightly be deemed to impair the force and effect which the full faith and credit clause and the Act of Congress require to be given to [a money] judgment outside the state of its rendition.

*Baker by Thomas*, 522 U.S. at 233-34 (emphasis in original; internal cites and quotation marks omitted). *See also V.L.*, 136 S.Ct. at 1020 (explaining that "the full faith and credit clause of the Constitution precludes any inquiry into the merits of the cause of action, the logic or consistency of the decision, or the validity of the legal principles on which the judgment is based"); *Ledoux-Nottingham v. Downs*, 210 So. 3d 1217, 1222-23 (Fla. 2017) (stating that the United States Supreme Court "continues to reject any notion that a state may elevate its own public policy over the policy behind a sister state's judgment and thereby disregard the command of the Full Faith and Credit Clause").

Because the New York confessed judgment appears on its face to be rendered by a court of competent jurisdiction and Novabella did not challenge the jurisdiction of the New York court to enter the confessed judgment, the trial court was required to afford full faith and credit to the New York confessed judgment. *See, e.g., V.L.*, 136 S.Ct. at 1022. Accordingly, the trial court erred by refusing to grant the judgment full faith and credit and by dismissing with prejudice EBF's foreign judgment enforcement petition.[11] Thus, we reverse the trial court's judgment and remand this case to the trial court for further proceedings not inconsistent with this opinion.

Reversed.[12]

Riley, J., and Robb, J., concur.

---

[11] We recognize that Section 3.2(C) of the Purchase Agreement executed by the parties provides that a confession of judgment could be entered only "[i]f permitted under the laws of the state in which the Seller [Novabella] resides . . . ." (App. Vol. 2 at 21). However, the question before the trial court below and us on appeal is whether the Indiana trial court was required to enforce and give full faith and credit to the New York confessed judgment. If the New York court should not have entered the confessed judgment, Novabella's recourse to challenge the New York confessed judgment lies in the New York court.

[12] We note that EBF and Terranova, along with another one of his companies, have a similar appeal pending before our Court under cause number 49A05-1710-CC-2384.